B.S.W. GROUP, INCORPORATED, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6646–77X.      Filed May 30, 1978.

Edward L. Williams (an officer), for the petitioner.
*Kevin M. Bagley*, for the respondent.

## OPINION

RAUM, *Judge:* Respondent determined that petitioner does not qualify for exemption from Federal income tax under section 501(c)(3), I.R.C. 1954. Petitioner challenges respondent's deter-

mination and has invoked the jurisdiction of this Court for a declaratory judgment pursuant to section 7428.[1] The issue is whether petitioner is operated exclusively for charitable, educational, or scientific purposes within the meaning of section 501(c)(3).

This case was submitted for decision on the stipulated administrative record under Rule 122, Tax Court Rules of Practice and Procedure. The stipulated administrative record is incorporated herein by this reference. The evidentiary facts and representations contained in the administrative record are assumed to be true for purposes of this proceeding.

Petitioner, the B.S.W. Group, Inc., is a corporation organized under the General Corporation Law of Delaware with its principal place of business in Garrett Park, Md. It filed its application for recognition of exemption under section 501(c)(3) on April 5, 1976, with the Baltimore District Office of the Internal Revenue Service. On July 8, 1976, the Internal Revenue Service issued a final adverse ruling that petitioner is not an organization described in section 501(c)(3). This ruling was reissued by the Service on April 5, 1977.

Petitioner was formed on February 18, 1976, for the purpose of providing consulting services primarily in the area of rural-related policy and program development. Petitioner plans to enter into consultant-retainer relationships with five or six limited resource groups involved with the fields of health, housing, vocational skills, and cooperative management. Petitioner's goal is to help such organizations deal with problems they face regarding the external environments within which they operate, changing priorities, and implementing realistic internal planning and management policies. Another important goal of petitioner is to improve clients' understanding of governmental policy processes and methods for becoming more effective in their work through public and private funding.

Petitioner's service to client organizations will be to furnish consultants to perform basic and applied research for clients. Specific research areas within petitioner's contemplation include

---

[1] The statutory prerequisites for this declaratory judgment have been satisfied: petitioner exhausted its administrative remedies, sec. 7428(b)(2); the petition was filed by the organization the qualification of which is at issue, sec. 7428(b)(1); and petitioner mailed its petition before the 91st day after respondent mailed his determination in this matter, sec. 7428(b)(3). See also Rule 210(c), Tax Court Rules of Practice and Procedure.

vocational skills training, alternative housing, health and health delivery systems, alternative financing for small-scale entrepreneurs, environmental impact programs, solid waste disposal, and multiple uses of organic and inorganic compounds in farm production activities. A large part of petitioner's attention will be directed towards youth groups, women and their reentry into the work force, and minority business and vocational training and placement. Petitioner will not advise clients on managing or improving the administration of their organizations. Much of petitioner's service to clients is intended to be an alternative to full-time staffing of client organizations where budget considerations and lack of expertise would otherwise prevent such staffing.

Petitioner proposes to utilize what it terms "nonformal consulting" as the means of conveying information to clients. As defined by petitioner, nonformal consulting consists of bringing advisors with like interests together with emerging groups or agencies in an informal framework having a flexible agenda, no fee schedule, and no extensive reporting. This form of consulting is tailored to small groups or institutions which need less structured methods for dealing with their problems.

Although petitioner did not have any clients at the time of its application for tax-exempt status, petitioner described in the following terms what it expected to be a typical consulting job:

The B.S.W. Group, Inc. has been approached by a non-profit tax-exempt organization in Pennsylvania which owns a 350-acre site. This organization would like to develop the site into a rural-small farm-demonstration [sic.] and training center. We have been asked to consider doing the basic research and planning for such a center over a 1-year period. Such a study would establish and document the situation and trends concerning key factors in the following primary areas:

—physical resource base
—human resource base
—political/institutional situation
—organization and structure of area agriculture
—agricultural/forestry systems now employed
—basic economics of these systems
—agricultural infrastructure
—land use patterns
—environmental issues
—energy issues

All of petitioner's consulting clients will be tax-exempt

organizations and not-for-profit organizations (some of which may not be tax-exempt). Prospective clients will become aware of petitioner primarily through "word of mouth" among peer or cooperative agencies. Petitioner will not advertise its services.

Individuals serving as independent contractors under contract with petitioner will perform the actual consulting services for clients. These individuals will be compensated by petitioner. The B.S.W. Group will charge client organizations a fee for making the arrangements with individual consultants. Petitioner and not the individual consultant will negotiate this fee, which will to some extent be based on the client's ability to pay as well as the value of the services to the client. Although petitioner's general policy will be to provide its consulting services at or close to cost, fees will generally be sufficiently high to enable petitioner to retain at least a "nominal" administrative fee over and above the amount payable to individual consultants.

Petitioner's proposed budget for 1976 and 1977 is as follows:

| | |
|---|---|
| Income | $18,000 |
| Expenses: | |
| Travel (approximately 10,000 miles, six States) | $1,800 |
| Per diem and lodging (approximately 120 staff days) | 4,200 |
| Materials preparation and training instructional equipment | 2,700 |
| Research and secretarial | 1,800 |
| Report preparation and review | 1,200 |
| Expendables (office supplies) | 600 |
| Telephone | 1,500 |
| Administrative expenses (18%) | 2,250 |
| Total anticipated expenses | 16,050 |
| Net income | 1,950 |

Petitioner plans to pay no salaries for the first several years of its operation other than the aforementioned amounts which will be paid to individual consultants serving as independent contractors.

All of petitioner's income will be derived from consulting services with no other anticipated sources of income. Petitioner seeks to meet all expenses from its consulting income. It also

desires to earn a net profit of no more than $2,000 in its first year to be used as a reserve for contingencies in future years.

Section 501(c)(3) provides, in pertinent part, that in order for a corporation to be exempt from taxation under sections 501(c)(3) and 501(a), it must be both organized and operated exclusively for certain specified exempt purposes, such as religious, charitable, or educational purposes. See also sec. 1.501(c)(3)–1(a), Income Tax Regs. These two requirements are known as the "organizational" and "operational" tests, and petitioner contends that it meets both of them as an educational, scientific, or charitable organization. The Commissioner does not dispute that petitioner is organized exclusively for the required purposes, see sec. 1.501(c)(3)–1(b), Income Tax Regs., but determined and continues to maintain that petitioner does not meet the "operational test" since it is "primarily engaged in an activity which is characteristic of a trade or business." See sec. 1.501(c)(3)–1(c), Income Tax Regs. The burden is on petitioner to show, upon the basis of materials in the administrative record, that the Commissioner erred in that determination.

The Commissioner ruled adversely to petitioner, relying in part upon Rev. Rul. 72–369, 1972–2 C.B. 245. In that ruling, an exemption was denied to an organization formed to provide managerial and consulting services at cost to unrelated exempt organizations on the ground that it was not "operated exclusively" for exempt purposes under section 501(c)(3). The ruling states:

> Providing managerial and consulting services on a regular basis for a fee is trade or business ordinarily carried on for profit. The fact that the services in this case are provided at cost and solely for exempt organizations is not sufficient to characterize this activity as charitable within the meaning of section 501(c)(3) of the Code. Furnishing the services at cost lacks the donative element necessary to establish this activity as charitable.

Compare Rev. Rul. 71–529, 1971–2 C.B. 234 (organization providing investment management services to other exempt organizations at substantially below cost is exempt).

In effect, the parties are in disagreement as to whether petitioner qualifies, under sec. 1.501(c)(3)–1(c), Income Tax Regs., as "operated exclusively" for educational, scientific, and/or charitable purposes. Under the operational test, the purpose towards which an organization's activities are directed, and not the nature of the activities themselves, is ultimately

dispositive of the organization's right to be classified as a section 501(c)(3) organization exempt from tax under section 501(a). See *Golden Rule Church Association v. Commissioner*, 41 T.C. 719, 728. Petitioner is engaged in one and only one activity, but it is possible for such an activity to be carried on for more than one purpose. *Better Business Bureau v. United States*, 326 U.S. 279, 283. See *Golden Rule Church Association v. Commissioner*, *supra* at 728. The fact that petitioner's activity may constitute a trade or business does not, of itself, disqualify it from classification under section 501(c)(3), provided the activity furthers or accomplishes an exempt purpose. Secs. 1.501(c)(3)–1(c)(1) and 1.501(c)(3)–1(e)(1), Income Tax Regs.; *San Francisco Infant School, Inc. v. Commissioner*, 69 T.C. 957 (1978). See *Monterey Public Parking Corp. v. United States*, 481 F.2d 175 (9th Cir.). Rather, the critical inquiry is whether petitioner's primary purpose for engaging in its sole activity is an exempt purpose, or whether its primary purpose is the nonexempt one of operating a commercial business producing net profits for petitioner.[2] Compare *American Institute For Economic Research v. United States*, 302 F.2d 934, 938 (Ct. Cl.), certiorari denied 372 U.S. 976; *Scripture Press Foundation v. United States*, 285 F.2d 800, 803–804 (Ct. Cl.), certiorari denied 368 U.S. 985; and *Fides Publishers Association v. United States*, 263 F. Supp. 924, 934–936 (N.D. Ind.), with *Elisian Guild, Inc. v. United States*, 412 F.2d 121, 124–126 (1st Cir.); *San Francisco Infant School, Inc. v. Commissioner*, 69 T.C. at 963–966. This is a question of fact to be resolved on the basis of all the evidence presented by the administrative record. See, e.g., *Parker v. Commissioner*, 365 F.2d 792, 798 (8th Cir.), certiorari denied 385 U.S. 1026; *Underwriters' Laboratories, Inc. v. Commissioner*, 135 F.2d 371, 372 (7th Cir.), certiorari denied 320 U.S. 756; *United Hospital Services, Inc. v. United States*, 384 F. Supp. 776, 780 (S.D. Ind.). Factors such as the particular manner in which an organization's activities are conducted, the commercial hue of those activities, and the existence and amount of annual or accumulated profits are relevant evidence of a forbidden predominant purpose. See, e.g., *American Institute For Economic Research v. United*

---

[2] In light of our conclusion *infra* that petitioner has failed to establish that its nonexempt purpose is not its dominant purpose, we express no opinion as to whether petitioner would be entitled to an exemption if we found that it had a "substantial," but less than predominant, nonexempt purpose. Compare *St. Louis Union Trust Co. v. United States*, 374 F.2d 427, 431–432 (8th Cir.).

*States,* 302 F. 2d at 938; *Scripture Press Foundation v. United States,* 285 F.2d at 803–804.

Petitioner's activity consists of selling consulting services to nonprofit or exempt organizations interested in rural-related policy and program development. Actual substantive research work is conducted by individual researchers supplied by petitioner to its clients. Petitioner's services are largely intended to be a substitute for full-time staffing of client organizations. Petitioner charges each client a fee based primarily upon its cost of obtaining paid researchers plus an "administrative" charge. Although the client's ability to pay may be taken into account, petitioner's overall fee policy is nevertheless generally to recoup its costs and to realize some profit. Petitioner's officers serve without pay, although they could at some future date begin to draw compensation for their services. Research personnel are paid for their services.

We must agree with the Commissioner that petitioner's activity constitutes the conduct of a consulting business of the sort which is ordinarily carried on by commercial ventures organized for profit, since the administrative record does not show otherwise and the burden was on the petitioner.[3] Petitioner's stated research areas include, among others, "alternative" housing, "alternative" financing for small-scale entrepreneurs, solid waste management, and environmental impact programs. Petitioner has completely failed to demonstrate that its own services, or the services performed by its consultants, are not in competition with commercial businesses such as personnel agencies, consulting referral services, real estate agents, housing rental services, banks, loan companies, trash disposal firms, or environmental consulting companies.[4] Competition with commercial firms is strong evidence of the predominance of nonexempt commercial purposes. See *American Institute For Economic Research v. United States,* 302 F. 2d at 938; *Scripture Press Foundation v. United States,* 285 F. 2d at 806 n. 11; *United Hospital Services, Inc. v. United States,* 384 F. Supp. at 780. Cf. *Trinidad v. Sagrada Orden de Predicadores,* 263 U.S. 578, 582;

---

[3]Petitioner asserts on brief that its services are intended to fulfill an unmet public need, and that commercial consulting firms do not engage in activities similar to those of petitioner. These factual representations are not based on evidence contained in the administrative record, and cannot be considered by the Court in this proceeding. See *Houston Lawyer Referral Service, Inc. v. Commissioner,* 69 T.C. 570.

[4]See n. 3 *supra.*

*People's Educational Camp Society, Inc. v. Commissioner*, 331 F.2d 923, 935 (2d Cir.), certiorari denied 379 U.S. 839 (sec. 501(c)(4)). But see *Metropolitan Detroit Area Hospital Services, Inc. v. United States*, 445 F. Supp. 857, 861–864. And since the conduct of a business with an apparently commercial character is petitioner's sole activity, we think that fact weighs heavily against exemption. This is not the typical case where an organization, concededly conducting substantial educational, scientific, or charitable activities, also conducts a trade or business related to its exempt functions. Compare, e.g., *Orton Foundation v. Commissioner*, 56 T.C. 147; *Golden Rule Church Association v. Commissioner*, 41 T.C. at 728–729.

Furthermore, petitioner's only role is that of a conduit linking individual researchers with interested client organizations seeking a substitute for full-time staffing. This aspect of petitioner's service is not inherently charitable, educational, or scientific. However, we would be sympathetic to petitioner if the record showed that the research conducted by the independent consultants in fact furthered exclusively exempt purposes. Unfortunately, the record does not contain an explanation of what is encompassed in research involving such areas as "alternative" housing, "alternative" financing for entrepreneurs, or solid waste management. Petitioner must explain how such vaguely defined activities further an exempt, and not commercial, purpose. See *Levy Family Tribe Foundation, Inc. v. Commissioner*, 69 T.C. 615, 619.

Several additional factors weigh against petitioner's claim. In the first place, its financing does not resemble that of the typical section 501(c)(3) organization. Petitioner has not solicited, nor has it received, voluntary contributions from the public. Its only source of income is fees for services, and those fees are set high enough to recoup all projected costs (including an unexplained $2,250 item, denominated "administrative expenses (18%)"), and indeed, to produce a net profit. This net profit ($1,950) is not insubstantial compared to projected income ($18,000), being 10.8 percent of income. Furthermore, although to some extent fees will reflect ability to pay, it does not appear that petitioner ever plans to charge a fee less than "cost." To be sure, petitioner states that its fee is "nominal," and it may in fact be lower than those charged by other firms. However, we think that this is not enough to prove that petitioner's purposes are primarily exempt.

In this respect, petitioner resembles certain health care organizations which have sought classification under section 501(c)(3) on the ground that they provide medical services which are of great social value. Despite the public benefit of the services provided, some degree of free or below-cost services to patients has generally been required to qualify these organizations as charitable before exemption has been granted under section 501(c)(3). See *Hassett v. Associated Hospital Service Corp.*, 125 F.2d 611, 614–615 (1st Cir.); *Sonora Community Hospital v. Commissioner*, 46 T.C. 519, 525–526, affirmed per curiam 397 F.2d 814 (9th Cir.); *Lorain Avenue Clinic v. Commissioner*, 31 T.C. 141, 160–161. It has also been held that a policy of charging low, rather than high, prices does not render medical services charitable. See *Lorain Avenue Clinic v. Commissioner, supra* at 161. See also *Medical Diagnostic Association v. Commissioner*, 42 B.T.A. 610, 615–616 (medical laboratory providing services to physicians at cost with intent that poor patients might be charged lower fees by physicians held not charitable). We think the same rules should apply here.

Another negative factor lies in petitioner's failure to limit its clientele to organizations which are themselves section 501(c)(3) exempt organizations, but only to organizations which are either nonprofit or exempt. In some cases, organizations conducting trades or businesses have been granted exemption on the grounds that they serve only exempt organizations and are performing services which their clients would otherwise have to provide for themselves in order to accomplish their own exempt purposes. See *Squire v. Students Book Corp.*, 191 F.2d 1018, 1020 (9th Cir.); *Hospital Bureau of Standards & Supplies, Inc. v. United States*, 158 F. Supp. 560, 562–563 (Ct. Cl.); *United Hospital Services, Inc. v. United States*, 384 F. Supp. 776 (S.D. Ind.). See also *Trustees of Graceland Cemetery Improvement Fund v. United States*, 515 F.2d 763, 770–771 (Ct. Cl.). But such cases cannot be of assistance to petitioner since petitioner does not propose to limit its services exclusively to organizations exempt because they are described in section 501(c)(3).

It is with some reluctance that we conclude that petitioner is not an organization described in section 501(c)(3) because its primary purpose is neither educational, scientific, nor charitable, but rather commercial. Petitioner's officers, at least for the present time, serve without compensation, and there is no

indication in the record that their personal motives are different from the stated purposes of petitioner. Furthermore, we are troubled by petitioner's assertion, on brief, that commercial consulting firms have not, in fact, shown any inclination to enter this particular field of consulting. Nonetheless, limiting our consideration to the materials in the administrative record as we must, we are unable to find that petitioner's primary purpose is educational, scientific, or charitable, rather than the conduct of an ordinary commercial consulting enterprise in competition with other commercial firms.

*An appropriate order will be entered.*