CHRISTIAN STEWARDSHIP ASSISTANCE, INC., PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 279–78X.     Filed September 21, 1978.

Douglas H. Kiesewetter (an officer), for the petitioner.
*Deborah A. Butler,* for the respondent.

## OPINION

DAWSON, *Judge:* Respondent determined that petitioner does not qualify for exemption from Federal income tax under section 501(a)[1] as an organization described in section 501(c)(3). Petitioner challenges respondent's determination and has invoked the jurisdiction of this Court for a declaratory judgment pursuant to section 7428.[2] The issue for our decision is whether petitioner is engaged primarily in activities which accomplish exempt purposes within the meaning of section 501(c)(3).

This case is submitted under Rule 122, Tax Court Rules of Practice and Procedure. The joint stipulation as to the administrative record and the administrative record were filed by the parties pursuant to Rule 217 and are assumed to be true for purposes of this proceeding. The pertinent facts are set forth below.

Christian Stewardship Assistance, Inc. (petitioner), was incorporated on October 29, 1975, as a nonstock corporation under the Nonprofit Corporation Act of Texas. The articles of incorporation state its purposes as follows:

The primary, exclusive and only purposes for which this corporation is organized are to support and assist religious, educational and/or other nonprofit organizations as they fulfill their exempt charitable activities by assisting such organizations in their relationships with their contributors and in stimulating proper application of Christian stewardship principles among their contributors. The recital of these purposes as contained in this paragraph

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

[2] Sec. 7428, which provides for this judicial relief, sets forth the prerequisites for declaratory judgment. We are satisfied that they have been met: Petitioner exhausted its administrative remedies, sec. 7428(b)(2); the petition was filed by the organization the qualification of which is at issue, sec. 7428(b)(1); and petitioner mailed its petition before the 91st day after respondent mailed his determination in this matter, sec. 7428(b)(3). See also Rule 210(c), Tax Court Rules of Practice and Procedure.

is intended to be exclusive of any and all other purposes, this corporation being formed for such assisting purposes only.

In furtherance of these purposes, petitioner is engaged in financial counseling by providing a financial planning service to wealthy individuals who have contributed to various Christian organizations and whose net worth exceeds one-half million dollars. These financial planning services are also performed for the directors and major officers of the Christian organizations.

The counseling given by petitioner consists of advice on how to increase a contributor's current or deferred donations to Christian organizations. Petitioner prepares a financial plan for a contributor which takes into account his personal goals and the applicable tax savings. The financial plan is developed to permit increased current or deferred donations by rearranging the inter vivos or testamentary disposition of the individual's assets to family members. The rearrangement also results in a reduction of Federal income and estate taxes. Tax and cost estimates comparing results under present and suggested financial plans are prepared by the petitioner with accompanying charts illustrating the effects of the suggested plan on family and Christian interests. Petitioner also assists the individual's attorney in implementing the financial plan chosen by the individual.

Petitioner operates on word-of-mouth referrals from Christian organizations, individuals it assists, and insurance, legal, and other financial professionals. To reimburse its costs of operation, petitioner charges a fee to each subscribing organization based upon a percentage of its developmental budget. Support is also received in the form of voluntary donations from individuals whom it assists. Individuals who are assisted are neither billed for, nor informed of, the costs of the counseling they receive.

On January 7, 1976, the Internal Revenue Service in Dallas, Tex., received petitioner's Application for Recognition of Exemption, signed February 19, 1975, requesting that an administrative determination be made that the organization is exempt from taxation under section 501(c)(3). Respondent issued a final notice of determination dated October 11, 1977, affirming a prior adverse determination of June 14, 1976, which denied exemption under 501(c)(3). Respondent determined that the described activities, although helpful to charitable organizations,

are not exclusively for charitable purposes, but rather serve private interests by advising individuals about methods to decrease Federal income and estate taxes.

An organization that is organized and operated exclusively for religious, charitable, or educational purposes is exempt from Federal income tax under sections 501(a) and 501(c)(3) if the organization is organized and operated exclusively for exempt purposes, if no part of its net earnings inures to the benefit of any shareholder or individual, and if a substantial part of its activities is not devoted to political or lobbying activity. All three of these requirements must be satisfied for tax exemption.

With respect to the first requirement, failure to meet either the operational or the organizational test negates exempt status. Sec. 1.501(c)(3)–1(a)(1), Income Tax Regs. An organization is not regarded as exempt if more than an insubstantial part of its activities authorized in its charter is not in furtherance of an exempt purpose specified in section 501(c)(3). Sec. 1.501(c)(3)–1(b)(1), Income Tax Regs. The presence of a single nonexempt purpose, if substantial in nature, will disqualify a potential section 501(c)(3) organization, notwithstanding the number or importance of truly exempt purposes. *Better Business Bureau v. United States*, 326 U.S. 279 (1945).

Respondent determined that petitioner violated the first requirement because the predominant purpose of the organization served private rather than public purposes. The final determination was based on the following reason:

> The activity of the organization consists of advice on income and estate tax planning to reduce the individual's liability for taxes to a minimum. Regardless of how this advice is characterized, it is advice which assists wealthy individuals in reducing their tax burden. This is the primary effect of the advice given. This serves the private interests of individuals rather than a broad public interest.

To prevail in this case petitioner must prove that respondent's determination is incorrect. *Hancock Academy of Savannah, Inc. v. Commissioner*, 69 T.C. 488 (1977); Rule 217(c)(2)(i), Tax Court Rules of Practice and Procedure.

It is petitioner's contention that it is inequitable to deny tax-exempt treatment to it for performing fundraising activities on an independent basis when these same activities receive

exemption when undertaken by the charitable organizations themselves. From this vantage point petitioner asserts that the work performed and offered by its organization is not for the private benefit of its membership or its clients. Petitioner contends that its founders have not benefited monetarily and its clients have not benefited economically from the services offered by its organization; rather, it is the charitable organizations to which gifts are made which receive the greatest economic benefit from petitioner's work.

Based on the administrative record and the arguments advanced by the parties, we conclude that the petitioner failed to qualify for exemption under the operational test because its organization was not operated exclusively for charitable purposes.[3] Its sole financial planning activity, albeit an exempt purpose furthering Christian fundraising efforts, has a nonexempt purpose of offering advice to individuals on tax matters that reduces an individual's personal and estate tax liabilities. Based upon those private benefits offered, we find the nonexempt purpose to be greater than the exempt purpose.

Petitioner earnestly argues that it is unreasonable to separate charitable planning from broader overall financial planning in an effort to demonstrate, as respondent attempts to do, that the inherent tax benefits constitute a nonexempt activity which substantially serves private purposes. Petitioner maintains that this interpretation of charitable giving does harm to charities and donors by denying an efficacious means for promoting large-scale private philanthropy.

Petitioner's characterization of tax benefits as incidental and parallel to the main charitable fundraising purpose is misdirected. Because we are concerned with a sole activity here, it is precisely the inexorable entwinement of private tax planning

---

[3]Respondent pleads nonexemption based on the reasoning that the predominant purpose of petitioner's organization serves private interests through advantageous tax treatment and concludes this is in contravention to the first requirement of sec. 501(c)(3). Although not incorrect, this generalization of the first requirement fails to adequately distinguish between the organizational and operational tests.

The organizational test attaches little importance to how broad or how narrow the exempt purposes are stated in the articles of incorporation as long as those purposes fall within sec. 501(c)(3) guidelines. Sec. 1.501(c)(3)–1(b)(1)(ii), Income Tax Regs. A stated purpose only needs to be described in detail when the stated activity, for example, a "school for adult education," can on its face be either exempt or nonexempt.

On its face petitioner's stated purpose is sufficiently vague, but we make no determination herein regarding the organizational test because we base our decision on its operational character.

with charitable donations that raises the question of whether the nonexempt purpose of tax planning takes on the character of a business purpose that transcends the charitable purpose, thus precluding petitioner from tax-exempt status.

This is basically a factual question which turns upon whether any nonexempt activity of an organization is substantial in nature. As stated in the regulations:

An organization will be regarded as "operated exclusively" for one or more exempt purposes only if it engages primarily in activities which accomplish one or more of such exempt purposes specified in section 501(c)(3). An organization will not be so regarded if more than an insubstantial part of its activities is not in furtherance of an exempt purpose. [Sec. 1.501(c)(3)–1(c)(1), Income Tax Regs.]

See *Better Business Bureau v. United States, supra.* In effect, petitioner is arguing that this Court, in order to find against petitioner, must first make a determination based upon some economical and moral calculus that the benefit derived by the individual contributor from petitioner's financial consulting is greater than the benefit to the charitable organizations derived from the contributions made as a result of petitioner's financial planning services. In our opinion such a determination is unnecessary. It is sufficient only to find, as we do, that "more than an insubstantial part of its activities is not in furtherance of an exempt purpose." Sec. 1.501(c)(3)–1(c)(1), Income Tax Regs. See and compare *B.S.W. Group, Inc. v. Commissioner*, 70 T.C. 352, 357 (footnote 2)(1978), holding that the taxpayer failed to establish that its nonexempt purpose was not its dominant purpose, although expressing no opinion on the particular issue here involved.

Petitioner's second argument is that it is inequitable or inconsistent to deny petitioner tax-exempt treatment for performing the same fundraising activities that are permitted within other charitable organizations. The comparison is overly broad. Fundraising in petitioner's organization is its sole function. Against this proportional framework, the scope of private interests served in petitioner's organization is necessarily broad because the tax benefits are an important consideration and an influential leverage in charitable giving. It is this all pervasiveness of tax considerations that renders this aspect of petitioner's organization a substantial nonexempt activity which is in contravention of the operational test of section 501(c)(3). Cf.

*Fides Publishers Ass'n v. United States,* 263 F. Supp. 924, (N.D. Ind. 1967). See and compare *Pulpit Resource v. Commissioner,* 70 T.C. 594 (1978), a close case on its facts.

Petitioner aligns itself with recognized charitable organizations and states in its brief that its purposes are to upgrade present financial planning on a higher level of technical competence and to assist, not usurp, the roles of its clients' attorneys and accountants. This distinction glosses over an important function—the tax planning aspects of petitioner's organization. These aspects, which are herein deemed substantial nonexempt activities, enable petitioner to provide commercially available services to wealthy individuals free of charge. In denying tax-exempt status for a corporation which provided, inter alia, an investment advice service the court regarded as "one commonly associated with a commercial enterprise," the Court of Claims said:

> In order for plaintiff to obtain its "contributions," it must proffer something valuable in return. This necessity or purpose to provide such information and service as would be desired by the public places plaintiff in competition with other commercial organizations providing similar services. Plaintiff has chosen to compete in this manner and, as a consequence, plaintiff's activities acquire a commercial hue. [*American Institute for Economic Research v. United States,* 302 F.2d 934, 938 (Ct. Cl. 1962).]

Although the term "charitable" in this section is to be used in its "generally accepted legal sense" and there are "tax-exempt purposes which may fall within the broad outlines of 'charity' as developed by judicial decisions" (sec. 1.501(c)(3)–1(d)(2), Income Tax Regs.), we do not find within the scope of the word charity that the financial planning for wealthy individuals described in this case is a charitable purpose.

As we understand petitioner, it is essentially arguing here that when respondent focuses on the financial planning benefits to a contributor, it is, in effect, a case of the tax tail wagging the economic dog in that the charitable deduction will always be less than the amount of wealth passing from his control to the charitable organization.

We find this argument lacking in substance. It is precisely the nonexempt purpose which needs to be explored to determine how significant its features are within the exempt purpose of petitioner's sole activity of financial planning. We find this nonexempt purpose was pervasive enough to deny exempt status

because the private benefits were substantial. For example, when petitioner advises a contributor to establish a charitable unitrust gift,[4] the contributor ultimately forfeits the remainder. Nevertheless, this loss is voluntarily exchanged for considerable lifetime advantages. Unitrusts generate substantial income and estate and gift tax benefits, such as retained income for life, reduced capital gains tax, if any, on the exchange of appreciated investments, favorable tax rates for part or all of the income payments on certain investments, and lower probate costs. Consequently, there are real and substantial benefits inuring to the contributors by the petitioner's activities.

Petitioner confuses the concepts of charitable donations under section 170 with the charitable exemption provisions under section 501(c)(3). Petitioner feels its organization is facilitating the flow of moneys from private bank accounts into the public coffers of charitable organizations. Petitioner would have us look only to the recipients which qualify under section 501(c)(3) and close our eyes to the donors who are maximizing their tax benefits under section 170(c). While we do not doubt the sincerity of petitioner's charitable intent, we cannot endorse such a myopic view. We think the tax benefits inuring to the contributors are more than peripherally visible and are in fact substantial enough to deny exemption.

In addition to the legal principles expounded in this case, petitioner maintains that, if we sustain respondent's determination, it not be retroactive because respondent's tardiness was deleterious to the financial planning of its organization.[5]

---

[4] Petitioner's proposed financial plan includes the charitable remainder unitrust which serves as a good example of the retained life income concept. A "unitrust amount" is paid annually to the designated beneficiaries from assets irrevocably transferred by a donor to a trust. The trust usually ends with the last beneficiary's life or after a term of years not to exceed 20, after which time the trust assets are given to the designated charitable organizations.

The "unitrust amount" paid per year is the sum of the net fair market value of the trust assets, which are revalued each year, multiplied by a fixed percentage not less than 5 percent. If the calculated "unitrust amount" exceeds the available trust income, the trustee is often permitted under the trust instrument to invade principal in order to satisfy the deficit, many times without having to reimburse this difference in later years.

[5] Petitioner further contends that the retroactive denial of the petitioner's exemption application would cause undue hardship on its employees by requiring them to pay the resulting Federal Insurance Compensation Act (FICA) taxes due from the periods prior to the denial of the petitioner's application. Respondent's adverse determination letter states that contributions to petitioner are not deductible under sec. 170.

Sec. 7428 provides for the validation of certain contributions made during the pendency of proceedings if the determination made by the respondent involves the revocation of the exempt status of the organization and a proceeding pursuant to sec. 7428 has been initiated within the time provided

Petitioner argues that respondent took 588 days to determine petitioner's status as opposed to the 270 days from the date of the original application, as required by section 7428.

Section 7428 outlines the scope of declaratory judgment relief available in the Tax Court and the circumstances under which it may be sought. The 270-day period provided for in that section is a minimum period to enable respondent to consider determination requests without judicial interference. When the 270-day period ends, the Court may grant declaratory judgment if the organization has taken all reasonable and timely steps to secure such determination.[6]

The administrative record establishes that respondent has not protracted the administrative proceedings. The parties exchanged correspondence and held conferences throughout the period from the date of the original application to the date of the final adverse determination in order for the facts to be fully developed and a proper determination made with respect to the activities of the petitioner and the requirements for section 501(c)(3) status. As a result, we do not find that respondent was tardy in processing the petitioner's exemption application.

Accordingly, we find that petitioner's services involved advantageous tax treatment to wealthy individuals. We also find these services to be a nonexempt purpose that is substantial in nature. Therefore, we hold that petitioner fails to meet the operational test and is not qualified for exemption from taxation pursuant to section 501(a) as an organization described in section 501(c)(3).

*Decision will be entered for the respondent.*

---

for by that section. The section does not provide for the validation of contributions made during the pendency of proceedings involving the initial denial of an organization's exempt status.

[6]See *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971), for a discussion of retroactivity. See also *Prince Corp. v. Commissioner*, 67 T.C. 318 (1976), for a discussion of the 270-day period provided for in sec. 7428 pertaining to declaratory relief with regard to qualification of retirement plans under sec. 401(a).