CHRISTIAN MANNER INTERNATIONAL, INC., PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8332–77X.     Filed January 29, 1979.

Willie Day Smith (an officer), for the petitioner.
*Genelle F. Schlichting*, for the respondent.

OPINION

DRENNEN, *Judge:* Respondent determined that petitioner does not qualify for exemption for Federal income tax under section 501(c)(3), I.R.C. 1954.[1] Petitioner challenges respondent's determination and has invoked the jurisdiction of this Court for a declaratory judgment pursuant to section 7428. The issue presented to us is whether petitioner is operated exclusively for charitable, religious, or educational purposes within the meaning of section 501(c)(3) of the Code.

This case was submitted for decision on the stipulated administrative record under · Rule 122, Tax Court Rules of Practice and Procedure.[2] The stipulated administrative record is incorporated herein by this reference. The evidentiary facts and

---

[1]All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated.

[2]Petitioner refused to stipulate the administrative record filed by respondent pursuant to Rule 217, Tax Court Rules of Practice and Procedure. At the hearing on respondent's motion to show cause why the case should not be submitted on the administrative record, petitioner failed to show that the administrative record filed by respondent was not complete but moved that the record be supplemented with oral testimony from Smith and others to enlighten the Court on the true meaning of the various ministries conducted by petitioner in carrying out its purported religious and educational objectives. After hearing many transcript pages of oral argument by petitioner's president, Smith, the Court declined to permit petitioner to supplement the administrative record and ordered that the case be submitted on the administrative record filed by respondent. It is clear from Rule 217(a), and the note thereto, that only in very unusual circumstances would the Court permit any party to introduce before the Court any evidence not presented before the Internal Revenue Service and contained in the administrative record. The Court's function in declaratory judgment actions not involving revocations is to adjudicate whether the Commissioner's determination is erroneous based on the materials contained in the administrative record upon which the Commissioner's determination was based. Petitioner offered nothing that would justify departure from the expected procedure in this case.

representations contained in the administrative record are assumed to be true for purposes of this proceeding.

Christian Manner International, Inc. (hereinafter referred to as petitioner), was incorporated on January 13, 1976, pursuant to the Nonprofit Corporation Act of Texas, by Willie D. Smith (hereinafter referred to as Smith), Lois T. Smith, and Gary L. Hill. Smith, a registered chemical engineer by profession, was president of petitioner and its sole employee at the time the petition herein was filed. Its articles of incorporation state that the purposes for its organization are to teach and promulgate the gospel of Jesus Christ, to develop and maintain a Christian seminar center and international headquarters, to make direct application of the corporation's funds in the aid and assistance of those considered to be in need or infirm, to contribute to institutions which seek to evangelize and disciple, to provide scholarships or other assistance for worthy and indigent students, to share by media presentation the claims of the gospel of Jesus Christ, and for such other charitable, religious, and educational purposes as petitioner's directors may from time to time determine.

Petitioner filed an application for recognition of exemption under section 501(c)(3) on January 12, 1976. In the application, petitioner described its proposed activities as follows:

A. Charitable contributions have been received * * * to publish a Christian book. The funds for this book and others will be used for various Christian activities and employee support.

B. As more funds come in through Charitable contributions and gifts, a radio and possibly Tv ministry will be established.

C. Public speaking in Churches and Christian seminars will be accomplished as these develop.

D. A Christian Communications Center will be formed with the purpose of several organizations coming together to share office space, ideas and ministry functions.

E. All media will be used to educate in areas of Christian knowledge and growth, with films, material, etc.

Petitioner's income is derived from contributions and from the sale of Smith's books. Smith, under the pen name Elijah Two, wrote "The End of Time—The Messiah Comes." Evidently this book was written by Smith during 1974 and 1975. After some

unsuccessful attempts to have the book printed and published on a commission basis,[3] Smith contracted with Crescendo Publications, Inc., and Kingsport Press to publish and print the book. The unit cost was $0.45 per copy for 20,000 copies and $0.40 for additional copies.

Because the books were not received from the printer until December 21, 1975, little, if any, distribution occurred during that year. The books were distributed by advertisement, Christian book store contracts, Christian racks, and word of mouth. The distribution area for the book was primarily the State of Texas. Outlets through distributors with commercial racks were the primary means of distribution. All outlets sold the book for the standard price and commissions allowed to the bookstores and racks were determined according to standard commercial market procedures. The books were sold by petitioner for $2.95. Crescendo Publications, Inc., and Kingsport Press received 20 percent of the selling price and the bookstores and distributors received 40 to 60 percent. The remaining percentage was retained by petitioner. In return for a contribution of $3.50 a gift of the book was made. The minimum donation was increased to $5.

In 1974 and 1975, prior to petitioner's incorporation, $10,113 was received in contributions. Smith also provided $1,947.65 of his own funds. Apparently these funds were expended toward the publication of Smith's book. During the period January through September 1976, petitioner received $3,787.21 from book sales and $4,984.50 from contributions.[4] Petitioner's paid expenses during the same period totaled $8,147.39. The net profit amounted to $624.32.[5] Smith received a salary from petitioner during this period of $1,083.63.[6] Petitioner's financial reports show that all funds were used to meet expenses related to the publication, distribution, and sale of books and to repay Smith's

---

[3]At least one publisher refused to publish the book on the grounds that it was too controversial. The book predicts the end of the world as it is known today and refers to Henry Kissinger as the "anti-Christ."

[4]There is no numerical indication in the administrative record regarding the extent to which the contributions were made in return for Smith's book.

[5]Petitioner's financials indicate that it owed Crescendo Publications, Inc., $1,272.75, and Kingsport Press, $7,349, for publishing and printing Smith's second book, "The Gifts", see *infra*.

[6]Smith was paid $168.92 in the second quarter of 1976 and $914.71 in the third quarter of 1976. The financials do not reveal the basis upon which Smith is paid or the projected maximum salary he will receive.

loan, and that no funds were used to carry out any of the other specific purposes stated in petitioner's articles of incorporation.

Although petitioner stated in its application for recognition of exemption that its prospective activities included public speaking, seminars, a Christian communications center, and the use of all media, as of April 23, 1976, no seminars had yet been held nor had any speaking engagements occurred. During the first quarter of 1976, Smith wrote a second book, "The Gift."[7] Consequently, very little activity took place as far as soliciting funds or selling books. From August 1976 to the end of 1976, Smith conducted a "ministry" to bookstore owners. Ministry through other media has not been accomplished.

On June 8, 1976, petitioner's initial application for recognition of exemption was withdrawn from active consideration. The application was resubmitted by petitioner on September 2, 1976. On January 4, 1977, an adverse letter ruling was issued by the District Director denying the exemption in part on the ground that petitioner is not operated exclusively for exempt purposes because it is engaged in the publication and sale of religious books at a profit. Petitioner appealed this determination, but it was upheld by the Assistant Regional Commissioner on March 10, 1977. This decision was appealed by petitioner to the national office on March 15, 1977. On April 25, 1977, the decision of the District Director was upheld and a final adverse letter ruling was issued on July 7, 1977. The grounds for denial of the exemption are that:

in publishing and selling religious and educational books you were not operated exclusively for one or more exempt purposes as required by Section 501(c)(3), of the Internal Revenue Code, since the content of the publications is not educational, the preparation of the material does not follow methods educational in nature, the manner of distribution is not distinguishable from ordinary commercial publishing practices and is not valuable in achieving educational purposes, and it is serving private interests rather than the interest of the public as a whole.

Section 7428(a) permits this Court under certain circumstances to declare the correctness of a final determination by respondent that a corporation is not an organization described in section 501(c)(3) and therefore not exempt from tax under section 501(a).[8] The burden of proof is on petitioner to overcome

---

[7]In his oral argument Smith indicated that he had written 10 books up to the time of trial.
[8]Sec. 7428(a) provides in pertinent part:

the ground for denial of the exemption set forth in respondent's determination. Rule 217(c)(2)(i), Tax Court Rules of Practice and Procedure.

. Sections 501(a) and 501(c)(3)[9] provide an exemption from Federal income tax for an organization devoted to charitable, religious, or educational purposes if three prerequisites are satisfied; i.e., that it be organized and operated exclusively for religious, charitable, or educational purposes; that no part of its net earnings inures to the benefit of any private individual; and that no substantial part of its activities is carrying on propaganda, influencing legislation, etc. Of these prerequisites only that requiring that the organization must be organized and operated exclusively for religious, charitable, or educational purposes is at issue here.

The principal focus of respondent's arguments on brief is that petitioner's sole activity is the promotion, distribution, and sale of Smith's books at a profit. This activity, he argues, was conducted by petitioner for a commercial purpose which is substantial in nature. Therefore, he argues, it is not necessary for the Court to weigh this nonexempt purpose against the exempt purposes, if any, to determine whether petitioner is operated exclusively for charitable purposes. While we agree that a weighing of the importance of the exempt purpose against the substantial nonexempt purpose is not the test, we

---

(a) CREATION OF REMEDY.—In a case of actual controversy involving—

(1) a determination by the Secretary—

(A) with respect to the initial qualification * * * of an organization as an organization described in section 501(c)(3) which is exempt from tax under section 501(a) * * *

\*　　\*　　\*　　\*　　\*　　\*　　\*

upon the filing of an appropriate pleading, the United States Tax Court * * * may make a declaration with respect to such initial qualification * * * . Any such declaration shall have the force and effect of a decision of the Tax Court * * * and shall be reviewable as such.

[9]SEC. 501. EXEMPTION FROM TAX ON CORPORATIONS, CERTAIN TRUSTS, ETC.

(a) EXEMPTION FROM TAXATION.—An organization described in subsection (c) * * * shall be exempt from taxation under this subtitle unless such exemption is denied under section 502 or 503.

\*　　\*　　\*　　\*　　\*　　\*　　\*

(c) LIST OF EXEMPT ORGANIZATIONS.—The following organizations are referred to in subsection (a):

\*　　\*　　\*　　\*　　\*　　\*　　\*

(3) Corporations * * * organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office.

believe consideration must be given to whether the nonexempt purpose is independent of, or merely incidental to, the exempt purposes.

Petitioner complains at length that during the course of the administrative procedures at the district and regional levels of the Internal Revenue Service, respondent's agents did not specifically deny that petitioner was organized and operated exclusively for charitable, religious, or educational purposes but instead relied primarily on petitioner's failure to comply with the guidelines set forth in his own Rev. Rul. 67-4, 1967-1 C.B. 121, to deny petitioner's exemption. Petitioner fails to recognize that denial of a request for exemption under section 501(c)(3) necessarily denies qualification under all of the purposes mentioned in that section and that the specific activities mentioned in the various ruling letters are simply responses to the exempt purposes urged by petitioner. The burden of proof is on petitioner to demonstrate that it qualifies under at least one of the purposes stated in the section. We find nothing in the administrative record that indicates that respondent had determined affirmatively that petitioner qualified under any of the specific purposes mentioned in the section.

Petitioner is correct in its argument that revenue rulings are not the law but are merely the official interpretations of the law made by the Internal Revenue Service for the information and guidance of taxpayers, Internal Revenue officials, and others concerned. Rev. Proc. 72-1, 1972-1 C.B. 693. But this does not mean that the respondent is not justified in relying on his own revenue rulings as guidance for examining and determining a taxpayer's exempt status. It is up to the courts to decide whether the Commissioner's interpretation of the law in a revenue ruling is correct, if that becomes necessary in deciding a case.

Although conceding that the sale of Smith's books at a profit is an activity in which petitioner engages, petitioner argues that this was by no means its sole activity. In support of this contention petitioner points to the ministries purportedly conducted by it apart from the distribution and sale of the books. These activities are styled by petitioner as the ministries of reconciliation, preaching, teaching, faith, radio, television, encouragement, prayer, writing, solicitation, youth, and Christian leaders. Respondent would have us infer that these

activities, to the extent any were conducted, are adjuncts to the sale of Smith's books and the promotion of their ideas. Certainly there is little in the record to dispel this inference. In fact, Smith testified that all of his time was spent writing his books and that he does not actively attempt to conduct his ministry in other mediums. Rather, he waits to be approached by others, presumably because they have read his books. Moreover, petitioner's explanations of the purposes of each of these ministries are vague and unclearly stated—and there is no explanation of why each ministry should be considered distinct from the others. We believe it apparent from the record that these other ministries are intended to further the successful dissemination of Smith's books. In other words, and without disparaging the sincerity of Smith's convictions, these other ministries have no life independent of Smith's books.

A finding that petitioner's primary, if not sole, activity is the distribution, promotion, and sale of Smith's books does not end our inquiry with regard to petitioner's status. The question of whether petitioner engaged in this activity exclusively for exempt purposes poses difficult legal and factual issues. Therefore, a review of the regulations and decisions which have grappled with the "operated exclusively" standard of section 501(c)(3) will be helpful in reaching a decision here.

In *Better Business Bureau v. United States*, 326 U.S. 279 (1945), the Supreme Court, in interpreting section 811(b)(8) of the Social Security Act, which provided an exemption for corporations organized and operated exclusively for educational purposes, said:

in order to fall within the claimed exemption, an organization must be devoted to educational purposes exclusively. This plainly means that the presence of a single non-educational purpose, if substantial in nature, will destroy the exemption regardless of the number or importance of truely educational purposes. * * * [326 U.S. at 283.]

This philosophy, in somewhat modified form, has been carried into the regulations relating to section 501(c)(3). Section 1.501(c)(3)–1(c)(1), Income Tax Regs., provides:

An organization will be regarded as "operated exclusively" for one or more exempt purposes only if it engages primarily in activities which accomplish one or more of such exempt purposes specified in section 501(c)(3). An organization will not be so regarded if more than an insubstantial part of its activities is not in furtherance of an exempt purpose.

The quotation from *Better Business Bureau* above relates to "purpose" while the regulation quoted above deals more with "activities." Under the rationale of *Better Business Bureau* the existence of a substantial nonexempt purpose for a corporation's organization and existence would appear to defeat the exemption. But under the regulation, even if there was no nonexempt purpose for the organization and existence of the entity, it must actually engage primarily in activities which accomplish one of the exempt purposes, and if more than an insubstantial part of its activities do not further such exempt purpose, the entity is not exempt. It has been recognized, however, that an organization engaged in a single activity may have more than one purpose in conducting the activity. *B.S.W. Group, Inc. v. Commissioner*, 70 T.C. 352, 357 (1978). So we must be concerned with both the actual as well as the stated purposes for the existence of the organization and the activities it engages in to accomplish those purposes. What those purposes are and what purposes the activity or activities engaged in support are questions of fact. *Pulpit Resource v. Commissioner*, 70 T.C. 594 (1978).

Having decided that petitioner's primary activity was the distribution, promotion, and sale of Smith's books, we must next determine whether that activity was in furtherance of an exempt or a nonexempt purpose, or both. If the activity was engaged in to further a nonexempt purpose only, the exemption must be denied. If it was engaged in to further an exempt purpose only, petitioner would qualify as an exempt organization under section 501(c)(3). If the activity was engaged in to further both an exempt and nonexempt purpose, we must decide whether the nonexempt purpose was sufficiently substantial to deny the exemption or was so incidental to the exempt purpose as not to disqualify petitioner for exemption.

Several decisions have dealt with the tax-exempt status of organizations which publish and sell religious literature and, as might be expected, have reached conflicting results. However, a review of the pertinent cases highlights the tests used to resolve this issue. Our opinion in *Pulpit Resource* made such a review, and reference is made to that opinion for this purpose. In *Pulpit Resource*, we held that an organization whose sole activity was the publication and sale of a journal designed to improve preaching skills of the clergy was operated exclusively for

exempt purposes. In that case we found that the primary purpose of the organization was religious in nature and, while the sale of the journals for a profit had a commercial hue, that purpose was an integral part of and incidental to the petitioner's avowed religious purpose. Subsequently, in *Christian Stewardship Assistance, Inc. v. Commissioner*, 70 T.C. 1037 (1978), this Court held that an organization whose sole activity was providing financial advice and tax planning to wealthy individuals and the directors and officers of charitable organizations to assist in providing for increased contributions to the charitable organizations was not exempt under section 501(c)(3). In doing so, we found that petitioner's planning activity—

albeit an exempt purpose furthering Christian fundraising efforts, has a nonexempt purpose of offering advice to individuals on tax matters that reduces an individual's personal and estate tax liabilities. Based on those private benefits offered, we find the nonexempt purpose to be greater than the exempt purpose. [70 T.C. at 1041.]

Looking to the purposes served by the primary activity of petitioner in this case, the publication of Smith's books, we find the principal purpose served was commercial in nature and for the private benefit of Smith. While petitioner's avowed purposes may ultimately be of an exempt nature, we find nothing in the administrative record that convinces us that the activities engaged in by petitioner were directly related to the accomplishment of those purposes. We are convinced that the actual purpose for the organization of petitioner was to publish Smith's books and provide him with an outlet for the exposition of his theories on "the end of time."

Smith's first book, "The End of Time—The Messiah Comes," relies on his interpretation of various passages from the holy scriptures to develop a timetable prophesying that the Messiah will come in 1980 and that that will be the end of time. While Smith's prophesy may be based on passages from the scriptures, that does not necessarily make the publication of the book religious in purpose. *Scripture Press Foundation v. United States*, 285 F.2d 800 (Ct. Cl. 1961).

Respondent determined in his final ruling letter that the content of petitioner's publications is not educational and the manner of distribution is not valuable in achieving educational purposes. "Education" is defined in section 1.501(c)(3)–1(d)(3)(i), Income Tax Regs., as relating to:

*(a)* The instruction or training of the individual for the purpose of improving or developing his capabilities; or

*(b)* the instruction of the public on subjects useful to the individual or beneficial to the community.

Petitioner has failed to convince us that respondent erred in determining that the activity of publishing Smith's books was not accomplishing an educational purpose.

But even if we assume that the publication of Smith's books was in part in furtherance of religious or educational purposes, petitioner would still not qualify for exemption under section 501(c)(3) because a substantial part of the activity it engaged in was in furtherance of a purpose to benefit Smith personally rather than to benefit the public at large and it was commercial in nature. Smith's books were priced to return a profit to petitioner and the distribution and marketing of the books were patterned on standard commercial practices. Even though petitioner argues that some of the books were given away, the gifts were made in return for a minimum contribution which exceeded the list price of the books. Profits admittedly are petitioner's goal and most, if not all, of petitioner's efforts have been directed toward its realization.

It is also clear that the projected activities to advance the gospel have not been implemented. Although there is some validity to petitioner's argument that profits are necessary before petitioner's projected activities can be effectively begun, it is also true that no serious or-meaningful preparation has been made by petitioner with regard to those activities. And, quite frankly, the rambling and obscure positions taken by petitioner in the various documents submitted to the Internal Revenue Service with regard to its proposed activities leave us with the feeling that petitioner's future plans are not firmed up. Moreover, as respondent points out, the publication and sale of Smith's books are directly competitive with other businesses which market religiously oriented literature.

We find that this case more closely resembles such cases as *Scripture Press Foundation v. United States, supra; Fides Publishers Ass'n. v. United States,* 263 F. Supp. 924 (N.D. Ind. 1967); *B.S.W. Group, Inc. v. Commissioner, supra;* and *Christian Stewardship Assistance, Inc. v. Commissioner, supra,* wherein it was held that the petitioners did not qualify for exemption because their activities were primarily in furtherance of

nonexempt purposes and were incidental to the religious, charitable, or educational purposes. While there are similarities in the activities of the petitioner in this case and the activities of the petitioners in *Saint Germain Foundation v. Commissioner*, 26 T.C. 648 (1956); *Elisian Guild, Inc. v. United States*, 412 F.2d 121 (1st Cir. 1969); and *Pulpit Resource v. Commissioner, supra*, in each of those cases it was found that the activities engaged in were primarily in furtherance of their exempt purposes and that any nonexempt purposes which might be supported by such activities were insubstantial and incidental to the exempt purposes.

We conclude that petitioner was not operated exclusively for a purpose exempt under section 501(c)(3), so the exemption was properly denied by respondent.

*Decision will be entered for the respondent.*