T.C. Memo. 1997-424



UNITED STATES TAX COURT



KJ'S FUND RAISERS, INC., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10279-96X.                    Filed September 22, 1997.


Stephen S. Ankuda, for petitioner.

Ronald B. Weinstock, for respondent.



MEMORANDUM OPINION


RAUM, Judge:  The Commissioner determined that petitioner

did not meet the section 501(c)(3)[1] requirements for

qualification as an exempt organization, with the consequence

———————————

     [1]  Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the years at issue, and
all Rule references are to the Tax Court Rules of Practice and
Procedure.

that it is not exempt from income tax under section 501(a). Specifically, the Commissioner determined that petitioner failed to establish that it operated exclusively for exempt purposes under section 501(c)(3). This case is before us on a petition for declaratory judgment pursuant to section 7428. The parties filed a joint stipulation as to the completeness and correctness of the administrative record and submitted this case for determination under Rule 122.

Kristine Hurd and James Gould are the sole owners of KJ's Place, a lounge where alcoholic beverages are served. The term KJ is obviously derived from the first initials of the first names of the owners, Kristine and James. In 1992, Kristine and James created petitioner, KJ's Fund Raisers, Inc. They had petitioner incorporated as a Vermont Non-Profit Corporation on October 12, 1992. They also had petitioner file a Form 1023, Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code on November 11, 1992.

Petitioner's business is selling Lucky 7 or other break-open (or lottery or rip) tickets. The lottery tickets are sold exclusively at KJ's Place; no other locations were considered. The tickets are sold during regular business hours by the owners and employees of KJ's Place.

Petitioner was organized purportedly to "raise funds for distribution to charitable causes". Petitioner expects the

majority of its funds to come from the sale of lottery tickets and does not plan to solicit public donations, but will accept any donations offered. There is no evidence in the record that any such donations were ever offered or received.

When petitioner was organized, Hurd and Gould were both officers and directors. She was president; he was vice president, secretary, and treasurer. The third member of the board of directors was Karen Gould, a relative of James Gould.

In April 1993, petitioner replaced its board of directors. Of the three new members, two were related to Hurd or Gould. The board has been altered since then. The current board has two members unrelated to Hurd or Gould; the third is Kristine Hurd's sister. In a letter to the IRS, petitioner indicated that it would further revise its board so that none of the members were related to the officers of KJ's Place. However, that change has never been implemented.

In 1993, petitioner paid Hurd and Gould compensation of $6,000 each for bookkeeping, accounting and managerial services. Petitioner also paid $6,000 in rent to KJ's Place. The measure of compensation was determined by Hurd and Gould. On July 1, 1994, changes in Vermont's gambling laws took effect. In accordance with these changes, petitioner stopped paying rent to KJ's Place and stopped paying wages to Hurd and Gould. Currently, there are no business dealings between petitioner's

directors and the owners of KJ's Place, and petitioner's books are kept separate from the accounts of KJ's Place.

From the proceeds of the sales of the lottery tickets, petitioner has made grants to a variety of organizations. Some of these grants have been memorialized in local newspapers. Of six clippings sent to the IRS by petitioner, two have a photo of Hurd or Gould in front of KJ's Place handing out a check on behalf of petitioner. One clipping notes that KJ's Fund Raisers is a new corporation located at KJ's Place. Another shows a director of petitioner presenting a check and identifies the proceeds as arising from rip-ticket sales at KJ's Place.

In its preliminary adverse determination letter, issued on June 7, 1994, the IRS indicated that the identity of the lounge owners and the officers of petitioner put Hurd and Gould in a position to control petitioner. Petitioner responded as follows:

> With respect to control of the organizations, it may appear that all of KJ's Fundraisers, Inc., fundraising activities can be controlled by the owners of the lounge due to the relationship between officers and directors of each. It is our opinion, however, that KJ's Fund Raisers, Inc. would fold without the original founders of the organization as officers and local charities would go unfunded. Therefore we do not view the appointment of the present officers as a function of control but more as a function of going concern.

The IRS issued its final adverse determination letter on February 27, 1996. It stated:

> You have failed to establish that you are operated exclusively for exempt purposes under section

501(c)(3). You have failed to establish that your operation will not result in more than incidental private benefit. Furthermore, for the period prior to July 1, 1994, you have failed to establish that your net earnings will not inure to the benefit of private individuals.

Petitioner seeks a declaratory ruling that, as of July 1, 1994, petitioner is exempt from taxation under section 501(c)(3).

Section 501(a) provides that "An organization described in subsection (c) * * * shall be exempt from taxation under this subtitle". Subsection (c)(3) includes "Corporations * * * organized and operated exclusively for * * * charitable * * * purposes * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual".

Section 1.501(c)(3)-1(a)(1), Income Tax Regs., requires that for an entity to have exempt status it "must be both organized and operated exclusively for one or more of the purposes specified" in section 501(c)(3). Respondent has conceded that petitioner meets the organizational test. Petitioner must demonstrate that it operates exclusively for exempt purposes.

Sec. 1.501(c)(3)-1(c)(1), Income Tax Regs., provides:

An organization will be regarded as "operated exclusively" for one or more exempt purposes only if it engages primarily in activities which accomplish one or more of such exempt purposes specified in section 501(c)(3). An organization will not be so regarded if more than an insubstantial part of its activities is not in furtherance of an exempt purpose.

An organization is not operated exclusively for exempt purposes unless it serves "a public rather than a private interest."

Sec. 1.501(c)(3)-1(d)(1)(ii), Income Tax Regs.  To meet this requirement, the organization must demonstrate

> that it is not * * * operated for the benefit of private interests such as designated individuals, the creator or his family, shareholders of the organization, or persons controlled, directly or indirectly, by such private interests.

Id.

Under the operational test, the organization's purpose, rather than the nature of its activities, determines whether the organization is entitled to tax-exempt status.  B.S.W. Group, Inc. v. Commissioner, 70 T.C. 352, 356-357 (1978).  Even an organization engaged in only one activity may have multiple purposes for that activity.  Copyright Clearance Center, Inc. v. Commissioner, 79 T.C. 793, 803 (1982).  A single nonexempt purpose, if substantial in nature, will disqualify an organization from qualification under section 501(c)(3).  Better Business Bureau v. United States, 326 U.S. 279, 283 (1945).  Determining the purpose of the organization is a factual question which concerns "both the actual as well as the stated purposes for the existence of the organization and the activities it engages in to accomplish those purposes."  Christian Manner International, Inc. v. Commissioner, 71 T.C. 661, 668 (1979).

Petitioner's case is factually similar to P.L.L. Scholarship Fund v. Commissioner, 82 T.C. 196 (1984).  In that case, the taxpayer was a nonprofit corporation formed to raise money for

college scholarships. It planned to raise money through the operation of bingo games held at the Pastime Lounge, a lounge owned by two members of the board of directors. The other board members consisted of an accountant and director of the lounge and two "bingo players." The board was self-perpetuating, with the existing directors selecting future directors. Id. at 197.

The owners of the Pastime Lounge ran the bingo games during regular business hours. Employees of the Pastime Lounge solicited orders for food and drink from the bingo players. However, the accounts of the Pastime Lounge were kept separate and distinct from those of the taxpayer. Id. at 197-198.

This Court held that the taxpayer had a nonexempt purpose which was "substantial in nature"; i.e., to promote business at the Pastime Lounge through the medium of the bingo games. Id. at 199-200. The Court based this conclusion in part on the identity of the taxpayer's board of directors with the owners and associates of the Pastime Lounge. Since the owners controlled the board and appointed its future directors, the Court reasoned, the taxpayer's activities could be used to the advantage of the Lounge. Id. at 200.

The taxpayer argued that the separate accounts and the fact that the Lounge received nothing from the taxpayer for wages or rent demonstrated that it was operated exclusively for an exempt purpose. The Court held otherwise:

> A realistic look at the operations of these two entities, however, shows that the activities of * * * [the taxpayer] and the Pastime Lounge were so interrelated as to be functionally inseparable.  Separate accountings of receipts and disbursements does not change that fact.
>
>      * * * Since the record in this case does not show that the * * * [taxpayer] was operated exclusively for exempt purposes, but rather indicates that it benefited private interests, exemption was properly denied.  [Fn. ref. omitted.]

Id.

The manner in which petitioner is operated benefits private interests, KJ's Place and its owners.  Like P.L.L. Scholarship Fund v. Commissioner, supra, petitioner's lottery tickets are sold at a single location, KJ's Place.  As in P.L.L. Scholarship Fund v. Commissioner, supra, the lottery tickets are sold during KJ's Place's regular business hours, their sale overseen by the owners of KJ's Place, Hurd and Gould.  While in KJ's Place, lottery ticket purchasers are solicited for beverages.  As in P.L.L. Scholarship Fund v. Commissioner, supra, the accounts of petitioner and KJ's Place are kept separate and apart.

Despite these similarities, petitioner contends that two factors distinguish it from P.L.L. Scholarship Fund v. Commissioner, supra.  First, the board of directors is responsible for running petitioner, and the majority of the board members are not related to the owners of KJ's Place.  Second, KJ's Place has allegedly lost money as patrons prefer to purchase lottery tickets rather than beverages.

Petitioner stresses that the board of directors, independent of Hurd and Gould, controls the distribution of proceeds raised by the sale of the lottery tickets.  While the board does decide which charities will receive funds, it is clear from the record that Kristine Hurd and James Gould control sales of the lottery tickets as they relate to KJ's Place.  It is also clear that their control is realistically independent of the board.  In a protest letter to the IRS dated July 18, 1994, petitioner concedes that the officers of KJ's Place appear able to control petitioner but defend it as necessary.

> It is our opinion, however, that KJ's Fundraisers, Inc. would fold without the original founders of the organization as officers and local charities would go unfunded.  * * * [Emphasis added.]

Before July 1, 1994, Hurd and Gould received wages and KJ's Place received rent from petitioner.  Although those practices ceased and are not in issue here, the current board of directors is composed of at least the majority of the same members who allowed those amounts to be paid.  This strongly suggests that Hurd and Gould are free to set policy for their own benefit without objection from the board.  Nothing in the record since July 1, 1994, indicates otherwise.

Petitioner also contends that KJ's Place actually lost money, since patrons preferred to buy lottery tickets rather than use their money to purchase beverages.  Thus, petitioner argues, there was no actual benefit.  While all facts must be accepted as

true for purposes of a declaratory judgment, Rule 217, conjectural statements such as the one above are entitled to no such consideration.  Petitioner has presented no evidence that KJ's Place lost money.  More important, KJ's Place has benefitted from the publicity surrounding donations given by petitioner.  In four of six newspaper articles or picture captions in evidence, KJ's Place is pictured or mentioned, along with Hurd or Gould, who are identified as the owners of KJ's Place rather than officers of petitioner.

Petitioner argues that the clippings are not paid advertising and do not indicate the receipt of an actual benefit by KJ's Place.  We find, however, that the publicity, which KJ's Place would not have received but for petitioner's exclusive association with the lounge, is a significant benefit.  Moreover, the record discloses that there were other "clubs" or lounges in the area where comparable gambling took place.  It is thus a fair inference that one of the real purposes of establishing petitioner in the first place was to induce customers with a proclivity for this type of gambling not to desert KJ's Place in favor of other clubs or lounges.  As a result of petitioner's formation, KJ's Place, far from losing revenue, may indeed have prevented at least a portion of its business from being taken elsewhere.

Petitioner engaged in the exempt activity of raising money for charitable purposes. Petitioner also operated for the substantial private benefit of KJ's Place and its owners. A substantial nonexempt purpose thus characterizes its operation, disqualifying it from exemption under sections 501(a) and 501(c)(3). Better Business Bureau v. United States, 326 U.S. at 283; Copyright Clearance Center, Inc. v. Commissioner, 79 T.C. at 803.

Decision will be entered

for respondent.