HUTCHINSON BASEBALL ENTERPRISES, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 13326–78X.    Filed October 24, 1979.

*Patrick J. Regan* and *William J. Wix,* for the petitioner.
*Deborah A. Butler,* for the respondent.

OPINION

STERRETT, *Judge:* Respondent, on August 28, 1978, issued a final adverse determination with respect to petitioner's exempt status under section 501(c)(3), I.R.C. 1954. This is an action for declaratory relief under the terms of section 7428.

The administrative record, which includes all the facts upon which respondent made his final adverse determination, was submitted to this Court under Rule 217(b)(1), Tax Court Rules of Practice and Procedure, and is incorporated herein by this reference. The facts and representations contained in the record are assumed to be true for purposes of this proceeding. This case was submitted as a fully stipulated case under Rule 122 by joint motion of the parties.

Petitioner Hutchinson Baseball Enterprises, Inc., was incorporated on August 31, 1970, as a not-for-profit corporation under the laws of Kansas. Its principal office is located in Hutchinson, Kans. The primary purpose for incorporation, as stated in the June 26, 1973, amendment to the articles of incorporation, was to promote, advance, and sponsor baseball, including Little League and amateur baseball in the Hutchinson area.

The full text of petitioner's purposes, as set forth in the amended articles, is as follows:

FOURTH

*Purposes:*
This Corporation is organized, NOT FOR PROFIT and the objects and purposes to be transacted and carried on are:

(a) Promote, advance and sponsor baseball, which shall include Little League and Amateur Baseball, in the Hutchinson, Kansas area.

(b) Promote youth activities in baseball and related recreational activities;

(c) Operate, lease, and grant rights to others in connection with the operation of concessions as related to and in connection with any activity that it is engaged in, in the promotion of baseball;

(d) Promote, and sell all types of advertising in connection with its baseball activities and program;

(e) To hold, purchase, acquire, sell, convey, lease, mortgage, take by gift, devise, donation or bequest, or otherwise acquire and dispose of property, real or personal, tangible or intangible;

(f) To borrow money and issue, sell or pledge bonds, promissory notes, debentures and other obligations and evidences of indebtedness, secured or unsecured;

(g) To engage in fund raising projects so as to raise and obtain money for the exclusive purpose of furthering the objects and purposes set forth herein;

(h) To organize club or clubs whose main purpose is the promotion and advancement of baseball as well as Little League and Amateur Baseball, and to operate the same exclusively for charitable, scientific, safety, or educational purposes, and no part of the net earnings of which shall inure to the benefit of any private shareholder or individual, and no substantial part of the activities of the organization shall be carried on for propaganda, or otherwise to attempt to influence legislation and shall not participate in or intervene in any political campaign on behalf of any candidate for public office, all within the meaning of section 501(c)(3) of the Internal Revenue Code of 1954 and any amendments or supplements thereto.

After amendment, article Fifth provided that:

This organization is a non-profit organization and no part of the dues, fees, assessments, moneys from fund raising projects or other moneys collected by the corporation shall inure to the benefit of any member of the corporation, and upon dissolution, any unexpended funds on hand shall be distributed to the United Community Chest of Hutchinson, Reno County, Kansas, if it be in existence, and if it be not in existence, then to be distributed in accordance with an order of the Judge of the District Court of Division I of Reno County, Kansas, except that such order shall be limited specifically to only those organizations described in Section 501(c)(3) of the 1954 Internal Revenue Code, and any amendments or supplements thereto.

On October 5, 1973, petitioner filed an application for exempt status under section 501(c)(3). Respondent recognized petitioner as an exempt organization under section 501(c)(3) effective as of October 5, 1973, by a determination letter dated October 24, 1973. Respondent's determination provided for the advance ruling period to end on July 31, 1975, by which time petitioner must have raised the public support necessary for avoidance of private foundation status.

By letter dated June 12, 1975, petitioner was requested to establish compliance with the public support requirements of section 509(a)(2). Pursuant to such request, petitioner supplied a statement breaking down its receipts for the fiscal years ended July 31, 1973, 1974, and 1975 as follows:

| | 7/31/73 | 7/31/74 | 7/31/75 |
|---|---|---|---|
| 1. Amount of gifts, grants, and contributions received ........................... | $28,750.00 | $50,600.00 | $56,275.00 |
| 2. Amount of membership fees ..................... | 0 | 0 | 0 |
| 3. Amount of gross receipts from admissions and sale of merchandise: | | | |
|     Advertisement ................................. | 4,385.00 | 4,595.00 | 4,340.00 |
|     Ticket sales ................................... | 2,141.00 | 2,191.50 | 2,521.75 |
|     Concession sales ................................ | 4,609.89 | 4,260.55 | 4,630.09 |
|     Program sales ................................... | 345.10 | 526.50 | 835.75 |
| | 11,480.99 | 11,573.55 | 12,327.59 |
| 4. Gross income from interest, dividends, rents, and royalties ................. | 0 | 0 | 0 |
| 5. Net income from unrelated business activities ................................ | 0 | 0 | 0 |
| 6. Tax revenue levied for your benefit and either paid to you or expended on your behalf .............. | 0 | 0 | 0 |
| 7. Value of services or facilities ................... | 0 | 0 | 0 |
| 8. Amount of other receipts: | | | |
|     Tournament fees received ..................... | 1,127.40 | 969.55 | |
|     Tournament participation receipts ............ | 1,125.55 | | 342.72 |
| | 2,252.95 | 969.55 | 342.72 |
| 9. Total .............................................. | 42,483.94 | 63,143.10 | 68,945.31 |
| 10. Nelson Hobart [President of Hutchinson Baseball Enterprise, Inc.] | 28,400.00 | 50,050.00 | 55,500.00 |
| 11. | 0 | 0 | 0 |

After reviewing such information, respondent, on December 15, 1975, notified petitioner that it had been classified as a private foundation.

As a result of an examination of petitioner's activities for the fiscal years ended July 31, 1974, and July 31, 1975, respondent concluded that it no longer qualified for exemption under section 501(c)(3). Respondent notified petitioner to this effect on January 12, 1977. Final adverse determination was issued August 28, 1978.

Petitioner is engaged in the following activities: (1) Owning and operating the Hutchinson Broncos (hereinafter Broncos) baseball team, (2) leasing and maintaining a playing field for the use of the Broncos, the American Legion teams, and a baseball camp, (3) furnishing instructors and coaches for the baseball camp, and (4) providing coaches for Little League teams. Petitioner also leases the baseball field to the local junior college for a nominal fee.

The Broncos is an amateur baseball team, owned by petitioner, which plays in a semiprofessional league. The league consists of 7 teams and covers a 3-State area. These 7 teams would be ranked in the top 15 teams in the nation. The Broncos also play

nonleague games with teams. The Broncos have a general manager, a coach, a grounds keeper, and trainer.

Broncos players are acquired through recruiting efforts or tryouts. Recruited players are often discovered by their high school or college coaches. The tryouts are open to the public and are advertized locally on the radio and in the newspaper. There are no prerequisites for selection as a team player. The resultant team is composed primarily of college baseball players.

Petitioner's bylaws provide that its players shall not be paid, either directly or indirectly, for their participation on the team. They do not share in the gate receipts. Prospective players are told that employment will be found for them during the Broncos season, and that the pay will be at least minimum wage. Local industry provides some jobs, but jobs are typically manual labor, ranging from roofing and insulation to maintenance of private yards. A few players are employed full time by petitioner. These players are given field maintenance jobs—picking up trash, cleaning restrooms and bleachers, mowing and watering the field, and repairing the field surface.

The players are also furnished with lodging in the Hutchinson Community Junior College dormitories, for which petitioner pays $2,300.

Petitioner leases a baseball facility, Bud Detter Field, from the city of Hutchinson for $500 per year. The facility leased includes the bleachers, concession stands, and appurtenances thereto. Pursuant to the lease, petitioner covenanted to keep the ball park clean and free of trash, to maintain and care for the playing field, and to pay for telephone service. The city agreed to provide trash barrels and pickup, to maintain the grandstand, lights, restrooms, and watering system and to pay for electricity and water used.

Petitioner also agreed that all American Legion baseball home games would be played on Bud Detter Field at no charge. The American Legion is allowed to host tournaments at the field for the actual cost of field maintenance. In exchange, petitioner received exclusive concession rights for all such games and tournaments.

When petitioner assumed the care of the field, the outfield was overgrown with weed grasses, the infield was bare, light poles and fences were hazardous, seats, walks, dugouts, and restrooms were in disrepair. Petitioner installed new fences and

screens and constructed dugouts, offices, a tool shed, and additional bleachers. The city of Hutchinson has calculated that petitioner's maintenance of the field has resulted in a savings of 4,150 man hours at an average of $4.12 per hour or $17,098 per year.

Petitioner approached the recreation commission for the Hutchinson parks department with a proposal for a baseball camp for children 7 to 12 years of age. Petitioner volunteered to assume complete responsibility for the program. However, the commission decided that it would provide a sports director to arrange publicity, collect a nominal registration fee to be kept by the commission, and schedule the sessions. Petitioner furnishes instructors, coaches, and playing field for the camp. It also gives each participant a Broncos T-shirt and a baseball cap and free admission to Broncos games. There are presently two 4-week sessions with a third session to be added as the need arises. Petitioner also provides coaches for Little League teams and admits participants thereof to Broncos games without charge.

Petitioner provides the two American Legion teams with free use of the Bud Detter Field for their home games. These teams consist of youths 14 to 18 years of age. This program was in jeopardy due to the cost of field maintenance. The arrangement with petitioner released the American Legion from the financial burden of field maintenance. The program is now financially sound. Petitioner also makes the field available to Hutchinson Community Junior College for a nominal fee of $500.[1] The college has both a spring and fall season. Hutchinson Junior College did not have its own baseball facilities.

Petitioner raises funds through sales of tickets, advertising, concessions, contribution solicitation, and operation of the Broncos. For fiscal year ended July 31, 1973, petitioner calculated its income and expenses as follows:

*Gross receipts:*
Amount of gifts and contributions
received ................................................... $28,750.00
Gross receipts from admissions and
sale of merchandise:

---

[1]This fee approximates the cost of two sets of bases.

| | |
|---|---:|
| Advertising | $4,385.00 |
| Ticket sales | 2,141.00 |
| Concession sales | 4,609.89 |
| Program sales | 345.10 |
| Other receipts: | |
| Tournament fees received | 1,127.40 |
| Tournament participation receipts | 1,125.55 |
| Total gross receipts | 42,483.94 |

*Expenses:*

| | |
|---|---:|
| Team operations | 5,324.80 |
| Transportation | 6,259.80 |
| Recruiting | 2,235.52 |
| Ball park and field maintenance | 2,197.06 |
| Lodging | 2,590.51 |
| Capital improvements | 44.12 |
| Capital equipment | 355.44 |
| Public relations | 2,653.44 |
| Advertising | 16.25 |
| Wages | 14,706.48 |
| Taxes and interest | 1,874.07 |
| Concessions | 1,087.60 |
| Administration | 2,211.40 |
| Miscellaneous | 1,041.50 |
| Total expenses | 42,597.99 |
| Net income | (114.05) |

Petitioner's returns for its fiscal years ended July 31, 1974, and 1975 reflected the following amounts:

| Income: | 1974 | | 1975 | |
|---|---:|---:|---:|---:|
| Advertisement sales | $4,595.00 | | $4,340.00 | |
| Ticket sales | 2,191.50 | | 2,462.75 | |
| Concession sales | 4,260.55 | | 4,630.09 | |
| Program sales | 526.50 | | 835.75 | |
| Kansas State Tournament | 969.55 | | 342.72 | |
| Miscellaneous | 0 | $12,543.10 | 100.96 | $12,712.27 |
| Donations | | 50,600.00 | | 56,275.00 |
| Total income | | 63,143.10 | | 68,987.27 |
| Expenses: | | | | |
| Team operations | 7,219.08 | | 7,872.21 | |
| Transporation | 5,310.67 | | 8,913.59 | |
| Recruiting | 3,174.48 | | 5,380.25 | |
| Ball park and field . maintenance | 2,690.24 | | 1,290.66 | |
| Lodging | 5,310.67 | | 4,108.00 | |
| Capital improvements of park | 9,160.07 | | 1,424.16 | |

| | | | |
|---|---|---|---|
| Capital equipment | $2,453.49 | | $4,791.90 |
| Public relations | 6,989.45 | | 1,767.45 |
| Advertising | 1,175.30 | | 322.20 |
| Wages | 14,464.73 | | 18,761.38 |
| Taxes and interest | 3,245.92 | | 4,222.50 |
| Concessions | 4,134.58 | | 3,838.51 |
| Administration | 3,106.23 | | 2,226.51 |
| Kansas State Tournament | 1,288.75 | $69,723.66 | 0 | $64,919.32 |
| Net gain (loss) | | (6,580.56) | | 4,067.95 |

Subsection 501(a)[2] provides tax-exempt status for organizations described in subsection 501(c). Petitioner contends that it is an organization described in subsection 501(c)(3) which provided for the taxable years during which the advance ruling was in effect and for years commencing prior to October 5, 1976, as follows:

(c) LIST OF EXEMPT ORGANIZATIONS.—The following organizations are referred to in subsection (a):

\*　　\*　　\*　　\*　　\*　　\*　　\*

(3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office.

Thus, section 501(c)(3) sets forth three requirements (1) the corporation must be organized and operated exclusively for exempt purposes; (2) no part of the corporation's net earnings may inure to the benefit of any shareholder or individual, and (3) the corporation must not engage in political campaigns or, to a substantial extent, in lobbying activities. Only the first requirement is at issue herein.

Respondent's initial determination of October 24, 1973, did not question petitioner's organization.[3] It did put petitioner on notice

---

[2]SEC. 501. EXEMPTION FROM TAX ON CORPORATIONS, CERTAIN TRUSTS, ETC.

(a) EXEMPTION FROM TAXATION.—An organization described in subsection (c) or (d) or section 401(a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502 or 503.

[3]Respondent's initial determination letter of Oct. 24, 1973, is set out in relevant part as follows:

"Based on the information supplied, and assuming your operations will be as stated in your application for recognition of exemption, we have determined you are exempt from Federal income tax under section 501(c)(3) of the Internal Revenue Code.

that the initial determination assumed operation of petitioner in compliance with its organization and that petitioner must meet the public support criteria of section 509(a)(2)[4] to avoid private foundation status. However, respondent's final adverse determination, on August 28, 1978, contained the following general denial of section 501(c)(3) status:

> You do not meet the requirements for exemption under Section 501(c)(3) of the Internal Revenue Code because you are not organized and operated for a charitable purpose.

This language suggests that respondent found petitioner's organization deficient for section 501(c)(3) purposes.

Section 501(c)(3) exempt purposes are those of a charitable character. The term "charitable" is to be construed in its generic sense, not limited to the classifications enumerated by the

---

"Because you are a newly created organization, we are not now making a final determination of your foundation status under section 509(a) of the Code. However, we have determined that you can reasonably be expected to be a publicly supported organization of the type described in section 509(a)(2).

"Accordingly, you will be treated as a publicly supported organization, and not as a private foundation, during an advance ruling period. This advance ruling period begins on the date of your inception and ends on the date shown above.

"Within 90 days after the end of your advance ruling period, you must submit to us information needed to determine whether you have met the requirements of the applicable support test during the advance ruling period. If you establish that you have been a publicly supported organization, you will be classified as a section 509(a)(1) or 509(a)(2) organization so long as you continue to meet the requirements of the applicable support test. If, however, you do not meet the public support requirements during the advance ruling period, you will be classified as a private foundation for future periods. * * * "

[4]SEC. 509. PRIVATE FOUNDATION DEFINED.

(a) GENERAL RULE.—For purposes of this title, the term "private foundation" means a domestic or foreign organization described in section 501(c)(3) other than—

\* \* \* \* \* \* \*

(2) an organization which—

(A) normally receives more than one-third of its support in each taxable year from any combination of—

(i) gifts, grants, contributions, or membership fees, and

(ii) gross receipts from admissions, sales of merchandise, performance of services, or furnishing of facilities, in an activity which is not an unrelated trade or business (within the meaning of section 513), not including such receipts from any person, or from any bureau or similar agency of a governmental unit (as described in section 170(c)(1)), in any taxable year to the extent such receipts exceed the greater of $5,000 or 1 percent of the organization's support in such taxable year,

from persons other than disqualified persons (as defined in section 4946) with respect to the organization, from governmental units described in section 170(c)(1), or from organizations described in section 170(b)(1)(A) (other than in clauses (vii) and (viii)), and

(B) normally receives not more than one-third of its support in each taxable year from the sum of—

(i) gross investment income (as defined in subsection (e)) and

(ii) the excess (if any) of the amount of the unrelated business taxable income (as defined in section 512) over the amount of the tax imposed by section 511 * * *

statute. Sec. 1.501(c)(3)–1(d)(2), Income Tax Regs. It has been defined as "any benevolent or philanthropic objective not prohibited by law or public policy which tends to advance the well-doing and well-being of man." *Peters v. Commissioner*, 21 T.C. 55, 59 (1953).

The promotion, advancement, and sponsoring of recreational and amateur baseball does not literally fall within the enumerated classifications. The parties have not cited a precedential case[5] which has considered the section 501(c)(3) status of an amateur sports organization. Neither have we discovered such a case. We confess surprise that this is a case of first impression for this Court.

In 1976, Congress found section 501(c)(3) as written to be "a source of confusion and inequity for amateur sports organizations whereby some gained favored tax-exempt status while others, apparently equally deserving, did not." Joint Comm. on Taxation, 94th Cong., 2d Sess., General Explanation of the Tax Reform Act of 1976, 1976–3 C.B. (Vol. 2) 435. Therefore, Congress amended section 501(c)(3) to include in the enumerated charitable classifications organizations whose purpose is to "foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment)." (Sec. 501(c)(3).) The restriction embodied in the amendment is—

intended to prevent the allowance of these benefits for organizations which, like social clubs, provide facilities and equipment for their members. This provision is not intended to adversely affect the qualification for charitable tax-exempt status or tax deductible contributions of any organization which would qualify under the standards of existing law. [S. Rept. 94–1236 (1976), 1976–3 C.B. (Vol. 3) 808, 946.]

This legislative history indicates that Congress has long considered amateur athletics to fall within the penumbra of section 501(c)(3). Therefore, petitioner's stated purpose, the furtherance of recreational and amateur sports, falls within the broad outline of "charity" and should be so classified. We, therefore, find that petitioner was organized for one or more exempt purposes.

---

[5]Two District Court cases, *Mobile Arts & Sports Association v. United States*, 148 F. Supp. 311 (S.D. Ala. 1957), and *Lions Associated Drag Strip v. United States*, an unreported case (S.D. Cal. 1963, 13 AFTR 2d 973, 64–1 USTC par. 9283), have found organizations involved with the Senior Bowl and drag racing, respectively, to be classified as sec. 501(c)(3) organizations. The parties have also cited us to a plethora of revenue rulings, all of which are distinguishable.

For petitioner to be classified as a section 501(c)(3) organization, it must also be operated exclusively for one or more exempt purposes. Thus, its activities must advance its exempt purpose. Because a taxpayer may engage in a given activity for both exempt and nonexempt purposes, the operational test is satisfied only if the predominate motivation for engaging in such activity is an exempt purpose. *B.S.W. Group, Inc. v. Commissioner*, 70 T.C. 352, 357 (1978). The presence of a single substantial nonexempt purpose will disqualify the taxpayer from section 501(c)(3) status notwithstanding the existence of an exempt purpose. *Better Business Bureau v. Commissioner*, 326 U.S. 279, 283 (1945). The focus of the operational test is "the purpose towards which an organization's activities are directed, and not the nature of the activities themselves." *B.S.W. Group, Inc. v. Commissioner, supra* at 356.

Respondent contends that the Hutchinson Broncos is a semiprofessional baseball team, that operation of a semiprofessional team is by definition a nonexempt activity, that all activities emanating therefrom are nonexempt, and that such activities are a substantial nonexempt purpose precluding section 501(c)(3) classification. Respondent considers the remaining activities to be incidental to the nonexempt activities.

Respondent's definitional approach completely begs the question. Tax law does not rely on labels to determine taxability. We have found, *supra*, that the promotion, advancement, and sponsoring of amateur athletics is an exempt purpose. Petitioner is engaged in the following activities: (1) Owning and operating the Broncos; (2) leasing and maintaining a playing field for the use of the Broncos, the American Legion teams, and a baseball camp; (3) furnishing instructors and coaches for a baseball camp consisting of two 4-week sessions for children 7 to 12 years of age, and (4) providing coaches for Little League teams. Petitioner also leases the baseball field to the local junior college for a nominal fee. Respondent does not contend that petitioner's activities with respect to the baseball camp, the American Legion, or the Little League would not satisfy the operational test. Petitioner is clearly not a "social club" providing facilities

and equipment to its members within the meaning of the 1976 amendment to section 501(c)(3).[6] Therefore, the only remaining question is whether petitioner's activities with respect to the Broncos further the tax-exempt purpose.

Although for league purposes the Broncos are categorized as semiprofessional, the facts embodied in the administrative record describe a team composed of amateur players. Petitioner does not pay the players for their team participation, either directly or indirectly. They do not share in the gate receipts. A large percentage of the players continue to play for college teams during the school year, thereby evidencing their amateur status.

The players are acquired through recruiting efforts or tryouts. Recruited players are often discovered by their high school or college coaches. The tryouts are open to the public and are advertised locally on the radio and in the newspaper. There are no prerequisites for selection as a team player.

The players are guaranteed jobs in local industries at minimum wage during the Broncos baseball season. There is no suggestion in the record that any portion of the earnings resulting from such employment is, in substance, payment for participation on the Broncos team.

The players also receive free lodging in the Hutchinson Community Junior College school dormitories during the season at petitioner's expense. The Broncos have a manager, coach, and trainer who were paid for their services. The spectators, other than Little League participants and the children attending the baseball camps, are charged for admission to the Broncos games. Remuneration of staff employees, provision of dormitories, and entrance fees are common to organized amateur sports at both the collegiate and international levels of competition.

We find that the Broncos was an amateur baseball team. We find further that the purpose of petitioner's activities with respect to the Broncos—as with those engaged in with respect to the Little League, the baseball camp, the American Legion program, and the Hutchinson Community Junior College—was to advance amateur athletics, i.e., baseball, in the Hutchinson community. Therefore, we hold that petitioner has satisfied the

---

[6]The respondent has not contended that the 1976 amendment to sec. 501(c)(3) supports his revocation of the advance ruling.

operational test and should be classified as a section 501(c)(3) organization.

*Decision will be entered for the petitioner.*