HUTCHINSON BASEBALL ENTER-
PRISES, INC., Petitioner-Appellee,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent-Appellant.

No. 80–1179.

United States Court of Appeals,
Tenth Circuit.

Dec. 20, 1982.

Richard N. Bush, Atty., Dept. of Justice, Washington, D.C. (M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews and Richard Farber, Attys., Dept. of Justice, Washington, D.C., were on the brief), for respondent-appellant.

Patrick J. Regan, Wichita, Kan. (William J. Wix of Regan & McGannon, Wichita, Kan., was also on the brief), for petitioner-appellee.

Before HOLLOWAY, McKAY and SEYMOUR, Circuit Judges.

HOLLOWAY, Circuit Judge.

This is an appeal by the Commissioner of Internal Revenue from a decision by the United States Tax Court that the taxpayer

Hutchinson Baseball Enterprises, Inc., is organized for the promotion, advancement, and sponsorship of recreational and amateur athletics and therefore qualifies as a charitable organization under § 501(c)(3) of the Internal Revenue Code. 26 U.S.C.A. § 501(c)(3).

The Commissioner's final adverse determination was issued in August 1978, revoking an earlier ruling that the taxpayer qualified for the exempt status. This proceeding was then brought in the Tax Court as an action for a declaratory judgment under 26 U.S.C.A. § 7428. The administrative record was submitted under rules of the Tax Court and the case was submitted as a fully stipulated case under Tax Court rule 122 by joint motions of the parties. After the Tax Court's decision for the taxpayer, 73 T.C. 144, this timely appeal was taken by the Commissioner.

## I

The taxpayer Hutchinson Baseball Enterprises, Inc., was incorporated on August 31, 1970, as a not-for-profit corporation under the laws of Kansas. The amended articles of incorporation provide that one of the purposes of the corporation is to "[p]romote, advance and sponsor baseball, which shall include Little League and Amateur Baseball, in the Hutchinson, Kansas area." (Certificate of Amendment to Articles of Incorporation of Hutchinson Baseball Enterprises, Inc., attached to the by-laws of Hutchinson Baseball Enterprises, Inc.). The taxpayer is involved in a variety of activities, including owning and operating the Hutchinson Broncos baseball team (the Broncos), leasing and maintaining a playing field for the use of the Broncos, American Legion teams, and a baseball camp, and furnishing instructors and coaches for the Little League and baseball camp. The taxpayer also leases the baseball field to a local junior college for a nominal fee.

The Broncos baseball team, owned by the taxpayer, plays in a semi-professional league. The Tax Court found that the Broncos is an amateur team, and that determination is not challenged on appeal.

The team plays in a league consisting of seven teams based in a three-state area. The Bronco team is composed of collegiate baseball players. These players are recruited from various states around the country to play for the team during the summer. They receive no compensation for playing baseball, but they are guaranteed jobs at the minimum wage either with Hutchinson Enterprises in a non-playing capacity or with other organizations in Hutchinson, Kansas. Additionally, all team members receive free housing in a Hutchinson Junior College dormitory. (*See* Decision of Commissioner on Appeal to the Southwest Region, Exhibit 28–AB).

The Broncos practice and play their home games on Bud Detter Field, which is owned by the City of Hutchinson. The taxpayer Hutchinson Enterprises leases the field from the City for a monthly rental fee, with the proviso that it maintain the field and keep it in good repair. The taxpayer assumed the American Legion's lease of the field from the City of Hutchinson under an agreement with the American Legion which permits the Legion baseball team to use the field rent free and which grants Hutchinson Enterprises exclusive concession rights and profits therefrom for all events held at Detter Field. (Lease Agreement between American Legion and Hutchinson Baseball Enterprises, Inc. at 1–2). Since the taxpayer has assumed care of the field, it has improved the facility by installing new fences and screens, and by constructing new dugouts and offices, and additional bleachers to accommodate the larger crowds. (Addendum to Protest, Exhibit 26–Z, Dkt. No. 13326–78X).

In addition to allowing the American Legion the free use of the baseball field, the taxpayer permits the Little League and the youth baseball camp run by the City of Hutchinson to have free use of the baseball field and also provides Bronco team members to serve as coaches and instructors for these activities. Moreover, the taxpayer has made Bud Detter Field available during the school year to the Hutchinson Junior College for the fee of $500. (Decision of

Commissioner on appeal to the Southwest Region, Exhibit 28–AB.). The taxpayer raises money through sales of tickets, advertising, and concessions, through contribution solicitation, and through operation of the Broncos.

On October 5, 1973, the taxpayer filed an application for exempt status under § 501(c)(3). (Exemption Application, Exhibit 7–G). Effective as of October 5, 1973, the Commissioner recognized the taxpayer as an exempt organization under § 501(c)(3), by a determination letter dated October 24, 1973. The Commissioner's ruling provided for the advance ruling period to end on July 31, 1975, by which time the taxpayer was to have raised the public support necessary for avoidance of private foundation status.

By letter dated June 12, 1975, the Commissioner requested the taxpayer to establish compliance with the public support requirements of § 509(a)(2) of the Internal Revenue Code. 26 U.S.C.A. § 509(a)(2). Pursuant to such request, the taxpayer supplied a statement detailing its receipts for the fiscal years ended July 31, 1973, 1974, and 1975. After receiving such information, the Commissioner on December 15, 1975, notified the taxpayer that it had been classified as a private foundation. As a result of an examination of the taxpayer's activities for the fiscal years ended July 31, 1974, and July 31, 1975, the Commissioner concluded that the taxpayer no longer qualified for exemption under § 501(c)(3) and notified the taxpayer to that effect. The Commissioner issued a final adverse determination on August 28, 1978. (Exhibit 29–AC).[1]

The taxpayer challenged the ruling in this declaratory judgment in the Tax Court. The court's opinion stated that the term "charitable" is to be construed in its generic sense, and is not limited to classifications enumerated in the statute. The court found that the taxpayer was organized for one or more exempt purposes, that the

Broncos was an amateur baseball team, and that the purpose of the taxpayer's activities with respect to the Broncos—as with those engaged in with respect to the Little League, the baseball camp, the American Legion program and the Hutchinson Community Junior College—was to advance amateur athletics, *i.e.,* baseball, in the Hutchinson community. The court therefore held that the taxpayer satisfied the operational test and should be classified as a § 501(c)(3) organization. 73 T.C. at 153–56.

## II

The only issue on this appeal is whether the Tax Court erred in holding that the taxpayer qualified as a tax-exempt organization under § 501(c)(3) of the Internal Revenue Code. The facts are not in dispute and the subsidiary findings of the Tax Court are not questioned. The Commissioner challenges only the court's conclusion in favor of the taxpayer on its exempt status.

Section 501(a) provides tax exempt status for organizations described in § 501(c). These sections presently provide:

(a) EXEMPTION FROM TAXATION. —An organization described in subsection (c) or (d) or section 401(a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502 or 503 . . . .

(c) LIST OF EXEMPT ORGANIZA-TIONS.—The following organizations are referred to in subsection (a): . . .

(3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, *or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment)*, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part

---

1. The decision to revoke taxpayer's exemption status became final on August 28, 1978 to be effective from August 1, 1973.

of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office. (Emphasis added).

The italicized portion of § 501(c)(3) is the relevant new part of the subsection added by the Tax Reform Act of 1976, P.L. 94–455, 90 Stat. 1520. Other new language also appears in this subsection, quoted above, but it is not significant in this case.

■ Section 501(c)(3) thus sets forth three requirements a taxpayer must meet to achieve exempt status: (1) the corporation must be organized and operated exclusively for exempt purposes; (2) no part of the corporation's net earnings may inure to the benefit of any shareholder or individual; and (3) the corporation must not engage in political campaigns or, to a substantial extent, in lobbying activities. Only the first requirement is at issue in this case. In deciding whether the taxpayer here satisfied requirement (1), we will treat in turn the Commissioner's argument that (a) the Tax Court erred in holding that the promotion of an amateur sport, without more, is a qualifying charitable activity; and (b) by reason of the fact that its predominant activity is support of the Broncos, the taxpayer is disqualified for the § 501(c)(3) exemption for organizations furthering educational or other charitable purposes.

A

■ The Commissioner challenges the Tax Court's conclusion that the taxpayer was entitled to the § 501(c)(3) exemption by being organized for the promotion, advancement, and sponsoring of recreational and amateur baseball.

The Commissioner argues that the sole support cited by the Tax Court for its decision is the legislative history of the amendment of § 501(c)(3) as effected by the Tax Reform Act of 1976. He says the 1976 amendment added to the organizations already enumerated in § 501(c)(3), those whose purpose is to "foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment)," and stresses the more favorable treatment for fostering national and international amateur sports; that the history does not indicate that Congress was of the view that under existing law the mere promotion of amateur sports was a qualifying charitable purpose; that Congress actually recognized that promotion of amateur sports had not been viewed as a charitable purpose except where the organization engaged in sufficient instructional activities so as to qualify as an educational organization, or where the sports program was part of an overall recognized charitable activity such as the reduction of juvenile delinquency.

The Commissioner maintains that under existing law, consisting basically of revenue rulings, the fostering of amateur sports competition, without more, had not been regarded by the Commissioner as a qualifying charitable purpose; otherwise the amendment to § 501(c)(3) would have been unnecessary. He says that the Tax Court decision under the 1976 Act has the effect of imposing an added burden on such organizations generally. The anomalous result is that organizations like the taxpayer which promote local amateur sports qualify without regard to whether they provide facilities or equipment, while organizations promoting national and international sports are ineligible if they provide such facilities or equipment. Hence the Tax Court's interpretation is illogical and should be reversed.

At the outset we note that the Tax Court did not rely wholly on the legislative history of the 1976 amendment. The court persuasively reasoned that the organization's purposes in promoting numerous phases of recreational and amateur baseball for the community were of a "charitable" nature and within the broad meaning of the term "charitable" and the penumbra of § 501(c)(3). 73 T.C. at 152–53; *see*

§ 1.501(c)(3)–1(d)(2), Income Tax Regulations, 26 CFR § 1.501(c)(3)–1(d)(2). The regulation is pertinent in that it recognizes that the term "charitable" is to be construed in its "generally accepted legal sense and is, therefore, not to be construed as limited by the separate enumeration in section 501(c)(3) of other tax exempt purposes which may fall within the broad outlines of 'charity' as developed by judicial decisions."

The Tax Court cited *Peters v. Commissioner*, 21 T.C. 55. There a charitable contribution was held to have been made. The foundation benefitted was a corporation organized to furnish free public swimming facilities at a beach for residents of Cold Spring Harbor, New York, not having private facilities and not having means to acquire such facilities. A contribution was not a condition for use of the facility, which was open to contributors and noncontributors alike. The corporation was held to have been organized and operated exclusively for charitable purposes. The court found that the organization's dominant purpose was to provide convenient swimming and recreation facilities and was within the broad meaning of the term "charitable," stating (21 T.C. at 59):

> In its broader meaning, charity is not so limited but also embraces any benevolent or philanthropic objective not prohibited by law or public policy which tends to

advance the well-doing and well-being of man. *George E. Turnure*, 9 B.T.A. 871. Also see *Ould v. Washington Hospital*, 95 U.S. 303, [24 L.Ed. 450] . . .

The Commissioner cites statements from IV *Scott on Trusts 2d* § 374.6A (1967 ed.) and the *Restatement of the Law, Trusts 2d* § 374, comment n., that a trust for the mere promotion of sports is not charitable. However both authorities recognize that it has been held that a trust to promote sports among children may be upheld on the ground that it is a part of the education of children to improve their bodies as well as their minds. *See also College Preparatory School for Girls of Cincinnati v. Evatt*, 144 Ohio St. 408, 59 N.E.2d 142, 145. We are persuaded that in view of the various activities of the taxpayer furthering the development and sportsmanship of children and young men, Hutchinson Baseball Enterprises was properly held to qualify for the exemption as being organized and operated exclusively for charitable purposes.

Thus, on the wording of § 501(c)(3) and proper interpretation of the term "charitable," we agree with the Tax Court's ruling here. Moreover, we agree with the Tax Court's analysis of the legislative history. The Joint Committee explained the purpose of the 1976 amendment to § 501(c)(3) in statements set out in the margin.[2] In inter-

---

2. The Joint Committee stated:

*Prior Law*

Under prior law, organizations which teach youth or which are affiliated with charitable organizations have been able to qualify for exemption under Section 501(c)(3) and have been eligible to receive tax-deductible contributions. Other organizations which foster national or international amateur sports competition may be exempt from taxation under other provisions (such as Section 501(c)(4) (relating to social welfare organizations) or 501(c)(6) (relating to business leagues)) but often do not qualify to receive tax-deductible contributions.

*Reasons for Change*

Prior policy on the qualification for Section 501(c)(3) status has been a source of confusion and inequity for amateur sports organizations whereby some gained favored tax-exempt status while others, apparently equally deserving, did not. The failure of some of these organizations to obtain Section

501(c)(3) status and to qualify to receive tax-deductible contributions has discouraged contributions to these organizations, and has deterred other organizations from going through the legal expense of applying to the Internal Revenue Service for recognition of Section 501(c)(3) status. Congress believes that it is, in general, appropriate to treat the fostering of national or international amateur sports competition as a charitable purpose.

*Explanation of Provision*

The Act permits an organization the primary purpose of which is to foster national or international amateur sports competition to qualify as an organization described in Section 501(c)(3) and to receive tax-deductible contributions, but only if no part of the organization's activities involves the provision of athletic facilities or equipment. This restriction on the provision of athletic facilities and equipment is intended to prevent the allowance of these benefits for organizations which, like social clubs, provide facilities and

preting the legislative history, the Tax Court pointed to the concluding portion of the committee's "Explanation of Provision" statement, emphasized in note 2, *supra,* as showing that amateur athletic organizations could be exempt under § 501(c)(3) prior to the 1976 amendment. 73 T.C. at 153. We agree that the Joint Committee appeared to recognize that under prior law some amateur sports organizations did receive the favored tax-exempt status while other organizations did not. As the taxpayer points out, this recognition illustrates that Congress considered that under the existing law, the advancement of amateur athletics was a permissible charitable activity. The 1976 amendment added a further clarifying provision that organizations which foster national or international amateur sports competition are also within the exemption, subject to the restriction that they not provide athletic equipment or facilities.[3]

■ We thus are in agreement with the interpretation of the legislative history by the Tax Court instead of that of the Government. However, we prefer not to base our conclusion as to the state of earlier law on that subsequent legislative history. *See United States v. Price,* 361 U.S. 304, 313, 80 S.Ct. 326, 331–32, 4 L.Ed.2d 334; *Stauffer Chemical Co. v. E.P.A.,* 647 F.2d 1075, 1079 (10th Cir.). We are persuaded nevertheless that on the wording of the statute and its proper construction, the Tax Court reached the right conclusion in holding that "the furtherance of recreational and amateur sports, falls within the broad outline of 'charity' and should be so classified." 73 T.C. at 153.

B

There remains for consideration the Commissioner's contention that the taxpayer is disqualified for the § 501(c)(3) exemption because its predominant activity is the operation of the Hutchinson Broncos. He maintains this activity does not serve an educational or other recognized charitable purpose and was pursued to field the best team possible and win the championship of the league.

The Tax Court rejected the argument made along this line. It found that the Broncos was an amateur baseball team. The court found also that the purpose of the taxpayer's activities with respect to the Broncos—as with those it engaged in for the Little League, the baseball camp, the American Legion program and the Hutchinson Community Junior College—was to advance amateur baseball in the Hutchinson community. 73 T.C. at 155.

■ The presence of a single nonexempt purpose, if substantial in nature, will destroy the exemption, regardless of the number or importance of truly exempt purposes. *Better Business Bureau v. United States,* 326 U.S. 279, 283, 66 S.Ct. 112, 114, 90 L.Ed. 67. Nevertheless we agree with the views of the Tax Court concerning the taxpayer's support of the Broncos. While the Commissioner contended in the Tax Court that the Broncos is a semi-professional team, he now expressly states in his brief that the Government is not contesting on appeal the finding that the Broncos are an amateur team. (Brief for the Appellant at 10 n. 2). Thus we have the established fact that it is an amateur team which the taxpayer promotes.

The circumstances underlying that fact demonstrate the taxpayer's purpose of aiding development of these young athletes. The Bronco players are acquired by recruiting efforts or tryouts. They are often discovered by their high school or college coaches. The players receive free lodging

---

equipment for their members. *This provision is not intended to adversely affect the qualification for charitable tax-exempt status or tax deductible contributions of any organization which would qualify under the standards of prior law.* General Explanation of the Tax Reform Act of 1976, 94th Cong., 1st Sess. pp.

423–424 (1976–3 Cum.Bull. (Vol. 2) 434–436). (Emphasis added).

3. As the Tax Court noted, 73 T.C. at 153, the legislative history demonstrates that this restriction was intended to prevent the providing of facilities and equipment to members of organizations such as social clubs.

in the Hutchinson Junior College dormitories during the season at the expense of Hutchinson Baseball Enterprises. The players have jobs in local industry at the minimum wage during the season. In college a large percentage of the players continue to play for college teams during their school years. Finally, an important function of the Broncos team members was that they served as instructors and coaches for Little League teams and the baseball camps. (Administrative Decision, Exhibit 23–W, and Addendum to Protest, Exhibit 26–Z).

Considering all these circumstances, we agree with the conclusion of Tax Court. The support of the Broncos and the taxpayer's other activities were for the purpose of advancing amateur baseball and served proper charitable purposes within the § 501(c)(3) exception.

AFFIRMED.