T.C. Memo. 2015-218

UNITED STATES TAX COURT

GAMEHEARTS, A MONTANA NONPROFIT CORPORATION, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20303-13X.                    Filed November 16, 2015.

Ron Glick (an officer), for petitioner.

<u>Pamela J. Sewell</u>, for respondent.


MEMORANDUM OPINION

PUGH, <u>Judge</u>:  Respondent determined that GameHearts, A Montana

Nonprofit Corporation (GameHearts) is not exempt from Federal income tax under

section 501(a)[1] because it is not an organization described in section 501(c)(3).

_____

    [1] Section references are to the Internal Revenue Code of 1986, as amended.
                                                        (continued...)

[*2] Having exhausted its administrative remedies, GameHearts challenged that determination by timely seeking a declaratory judgment pursuant to section 7428(a). The sole issue to be decided is whether GameHearts qualifies for tax exemption as an organization described in section 501(c)(3).

Background

The administrative record upon which respondent made the final adverse determination was submitted to the Court by joint motion pursuant to Rules 122 and 217(b). For purposes of this proceeding, the facts and representations in the administrative record are accepted as true and are incorporated herein.

GameHearts is a nonprofit Montana corporation with its principal office in Kalispell, Montana. Its president and representative in this proceeding is Ron Glick. Article III of GameHearts' articles of incorporation and article II of GameHearts' bylaws describe its purpose as follows:

> Said corporation is organized exclusively for charitable, educational and/or scientific purposes, including, for such purposes, the making of distributions to organizations that qualify as exempt organizations under 501(c)(3) of the Internal Revenue Code, or the corresponding section of any future tax code, the specific purpose of the corporation is to provide for the benefit and civil welfare of the community and region in which the Corporation exists, with specific interest in

[1](...continued)
Rule references are to the Tax Court Rules of Practice and Procedure.

**[*3]**  promotion of adult sobriety and the general welfare of citizens of the State of Montana.

On July 14, 2010, GameHearts filed a Form 1023, Application for

Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code.

In the Form 1023 GameHearts provided the following description of its activities:

> GameHearts is a public benefit nonprofit organization committed to providing alternative forms of entertainment to adult members of the Kalispell area for the purpose of promoting adult sobriety. The program achieves its directive by providing free and low cost tabletop gaming activities in a supervised[,] non-alcoholic, sober environment, along with access to gaming accessories that are provided without cost to the participants. In fact, beginning players can learn and obtain free gaming materials solely for playing.
>
> The primary games that the program uses are tabletop customizable games, such as card and miniature games (CCGs and CMGs), though there is also a strong interest in promoting role playing games (RPGs), as well. GameHearts is working toward the betterment of our region through encouraging alternative gaming activities amongst participants during evening hours, as opposed to frequenting bars and casinos in the area, as well as to inspire decision making and problem solving abilities by teaching and promoting educational and strategic games and activities, using CCGs, CMGs, and RPGs as alternative entertainment.
>
> GameHearts does more than promote just sobriety though--it opens up an entirely new facet of the population to these kinds of educational and interactive games. People who would otherwise never know what a game like Magic, for instance, was really about now get free exposure to the game, complete with lessons and a beginning deck. Without an initial investment to begin playing, our participants have little obstacles in playing and interacting with other players. Since GameHearts is primarily an nonprofit, the bulk of

**[*4]** participants eventually find they need to purchase materials we simply do not have, since we are not interested in maintaining a full service retail business.  As such, GameHearts also helps boost the overall market shares of the industry by introducing new and motivated players into the environment.

GameHearts' website states that the organization does not promote absolute abstinence from alcohol or drug use but "encourages community minded sobriety during otherwise prolific times of alcohol and drug use, particularly Friday and Saturday nights."  To encourage adult sobriety GameHearts offers two separate programs.  One program is a tutorial on how to play the games, and the second program is "organized play."  GameHearts' only requirements to join either the tutorial or the "organized play" programs are that the participant be at least 18 years of age and be committed towards sobriety during "gameplay."  Those failing to meet the requirements are not allowed to participate and do not receive any materials from the programs.  The Form 1023 also explained that GameHearts was dependent on donations from the gaming community and was largely a "mobile tutorial program" but hoped to secure long-term support so that it could obtain a permanent facility.

A series of letters from GameHearts to respondent, through Mr. Glick, also characterizes its purpose and activities.  In an August 16, 2010, letter Mr. Glick stated that GameHearts "exists to provide recreational activities in a safe, sober

**[*5]** environment that keeps participants engaged in a social medium that precludes drinking and gambling recidivism." He also stated that "[t]he entire reason our program provides free services is to appeal to the poor, distressed citizens in our community." Acknowledging that the games GameHearts offers also are offered by the for-profit gaming industry, Mr. Glick argued that GameHearts' offerings are limited by the cards available to it through donations, and GameHearts "take[s] advantage of the surplus bulk leftover from the for-profit gaming industry". GameHearts does keep for sale a very small stock of gaming materials that were needed but were not donated. Apparently GameHearts does not offer (or sell) the high-value cards needed for competitive play. Because GameHearts cannot offer those high-value cards, its games are not attractive to those who could afford for-profit gaming alternatives. In a September 12, 2010, letter Mr. Glick summarized GameHearts' services as "therapeutic options for individuals wishing to maintain sober lifestyles, either recovery from addiction or those wishing to avoid the addictive lifestyle." In a July 6, 2010, letter Mr. Glick explained that some of GameHearts' projects are intended to teach participants how to develop relationships with retailers and game manufacturers and other gaming participants, create fair market access to trade and sales among members,

[*6] and encourage and teach "positive activities that teach important life skills and work ethics".

In a June 3, 2013, letter respondent notified GameHearts of the conclusion that, on the basis of the information provided, GameHearts did not qualify for exemption under section 501(a) as an organization described in section 501(c)(3) because GameHearts was not organized or operated exclusively for exempt purposes. Respondent based this determination on the conclusion that (1) GameHearts failed to establish that it benefited a charitable class; (2) GameHearts' nonexempt activities were more substantial than its exempt activities; and (3) GameHearts did not meet the requirements of section 1.501(c)(3)-1(d), Income Tax Regs., "because it did not limit activities to addicts with a low income."

Discussion

A. Declaratory Judgment

In a declaratory judgment action brought under section 7428, the organization bears the burden of proving that it is a section 501(c)(3) organization. See Rule 142. In order for the organization to meet this burden, the administrative record, upon which this case is to be decided, must contain enough evidence to support a finding contrary to the grounds set forth in the notice of determination.

**[*7]** Rule 217(a); see Nationalist Movement v. Commissioner, 102 T.C. 558, 572 (1994), aff'd, 37 F.3d 216 (5th Cir. 1994); Church in Boston v. Commissioner, 71 T.C. 102, 105 (1978). In other words, we limit the scope of our inquiry to the administrative record and "to the propriety of the reasons given by respondent for denying petitioner's application for exempt status." Aid to Artisans, Inc. v. Commissioner, 71 T.C. 202, 208 (1978) (citing Hous. Lawyer Referral Serv., Inc. v. Commissioner, 69 T.C. 570, 573 (1978)); see also Am. Campaign Acad. v. Commissioner, 92 T.C. 1053, 1063 (1989). In doing so we are mindful that a statute creating an exemption must be strictly construed. See Am. Auto. Ass'n v. Commissioner, 19 T.C. 1146, 1158 (1953); Associated Indus. of Cleveland v. Commissioner, 7 T.C. 1449, 1464 (1946).

B. Whether GameHearts Is Entitled to Exempt Status

A corporation that is organized and operated exclusively for charitable purposes, as described in section 501(c)(3), is exempt from Federal income tax unless exemption is denied under section 502 or 503. Sec. 501(a). Section 501(c)(3) includes the following organizations:

> Corporations * * * organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition * * *, or for the prevention of cruelty to children

**[*8]**  or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual * * *

To be exempt under section 501(c)(3), an organization must be both "organized" and "operated" exclusively for tax-exempt purposes.  See sec. 1.501(c)(3)-1(a)(1), Income Tax Regs.  An organization must satisfy both tests to be exempt under section 501(c)(3).  Id.

Of the exempt purposes listed in section 501(c)(3), GameHearts maintains that it is organized and operated for charitable purposes.  The term "charitable" is used in section 501(c)(3) in its generally accepted legal sense and includes, but is not limited to:  "[r]elief of the poor and distressed or of the underprivileged; * * * lessening of the burdens of Government; and promotion of social welfare by organizations designed to accomplish any of the above purposes, or (i) to lessen neighborhood tensions; * * * or (iv) to combat community deterioration and juvenile delinquency."  Sec. 1.501(c)(3)-1(d)(2), Income Tax Regs.  We have held that the term "charitable" embraces "any benevolent or philanthropic objective not prohibited by law or public policy which tends to advance the well-doing and well-being of man."  See Hutchinson Baseball Enters., Inc. v. Commissioner, 73 T.C. 144, 152 (1979) (quoting Peters v. Commissioner, 21 T.C. 55, 59 (1953)), aff'd, 696 F.2d 757 (10th Cir. 1982).

**[*9]**   We focus our analysis on what we believe to be respondent's primary objection--that GameHearts was not operated exclusively for charitable purposes because of the way it chose to promote adult sobriety and the general welfare of the citizens of the State of Montana.  An organization will be regarded as "operated exclusively" for one or more exempt purposes only if it engages primarily in activities which accomplish one or more of the exempt purposes specified in section 501(c)(3).  Sec. 1.501(c)(3)-1(c)(1), Income Tax Regs.  A single substantial nonexempt purpose will disqualify an organization despite the importance of its exempt purpose.  See Better Bus. Bureau of Wash., D.C. v. United States, 326 U.S. 279, 283 (1945).  If an organization serves private rather than public interests, it also will not meet the operational test.  See sec. 1.501(c)(3)-1(d)(1)(ii), Income Tax Regs.  Whether an organization satisfies the operational test is a question of fact to be resolved on the basis of all the evidence presented by the record.  Church of Scientology of Cal. v. Commissioner, 83 T.C. 381, 474 (1984), aff'd, 823 F.2d 1310 (9th Cir. 1987).

The Court must decide whether GameHearts is operated exclusively for the charitable purposes of promoting adult sobriety and general welfare by offering gaming opportunities in a sober environment.  GameHearts contends that it operates for charitable purposes because it provides relief for the poor, distressed,

[*10] or underprivileged and promotes general welfare by encouraging community-minded sobriety. Respondent counters that more than an insubstantial part of the activities of GameHearts furthers nonexempt social and recreational interests because GameHearts offers gaming to anyone who is over 18 and sober. That is, respondent's argument is that (1) gaming is recreational and (2) GameHearts does not limit its services to a charitable class. GameHearts responds that (1) the specific type of recreation should not matter and (2) it services a charitable class because its offerings are not competitive with the for-profit gaming industry.

The question before us then is under what circumstances an organization that offers a recreational activity to achieve a charitable purpose qualifies as a charitable organization. Our prior cases have acknowledged that an organization may be engaged in a single activity that has more than one purpose. B.S.W. Grp., Inc. v. Commissioner, 70 T.C. 352 (1978). In B.S.W. Grp., Inc., we framed the "critical inquiry" as "whether petitioner's primary purpose for engaging in its sole activity is an exempt purpose, or whether its primary purpose is the nonexempt one of operating a commercial business producing net profits for petitioner." Id. at 357. The purpose of the activity, not the nature of the activity itself, is determinative. Id. at 356-357; see Golden Rule Church Ass'n v. Commissioner,

[*11] 41 T.C. 719, 728 (1964).[2] Therefore, we must determine whether GameHearts' primary purpose for engaging in its sole activity (gaming) is an exempt purpose or whether there is another substantial nonexempt purpose (recreation).

In B.S.W. Grp., Inc. v. Commissioner, 70 T.C. 352, the organization at issue provided consulting services at cost to nonprofit, limited resource organizations engaged in various rural-related activities. We refused to disqualify the organization from classification under section 501(c)(3) merely because its activities might constitute a trade or business, but we ultimately concluded that the organization's activities were commercial rather than charitable. We found that the organization did not establish that it was not in competition with commercial consulting businesses, which weighed heavily against the organization because its sole activity was commercial. Id. at 358-359. The organization also charged fees for its services (at cost), producing a net profit, and failed to limit its clientele to other organizations exempt under section 501(c)(3). Id. at 359-360.

---

[2] In this regard, we agree with GameHearts that the type of recreational activity offered is not determinative--rather, as we explain below, we consider the other purposes and the potential benefits rather than the specific activity offered to achieve those purposes and benefits.

**[*12]** Consequently, we were unable to conclude that the organization's primary purpose was educational, scientific or charitable rather than commercial. Id. at 361.

In Schoger Found. v. Commissioner, 76 T.C. 380 (1981), we applied B.S.W. Grp., Inc. to conclude that a "religious retreat facility" was not operated primarily for an exempt religious purpose. We recognized that wholesome family recreation or contemplating nature might provide a family or individual with a religious or uplifting experience, but the organization failed to establish how the religious retreat experience being offered differed from the experience at any other quiet inn or lodge in Colorado.

We also have considered the line between exempt activities and nonexempt recreational activities in considering whether organizations that promoted amateur baseball qualified under section 501(c)(3) as organizations fostering national or international amateur sports. In Hutchinson Baseball Enters., Inc. v. Commissioner, 73 T.C. at 151, the Court held that the organization's activities primarily promoted baseball in the surrounding community by maintaining a baseball field for the public, providing coaches and instruction for children, and sponsoring a baseball camp and the organization thus operated for an exempt purpose. Id. at 155.

**[\*13]** In contrast, in <u>Wayne Baseball, Inc. v. Commissioner</u>, T.C. Memo. 1999-304, the Court held that the organization's nonexempt social and recreational activities were substantial in comparison to the organization's promotion of baseball in the community. The Court found that the only activity sponsored by the organization was the operation of an adult amateur baseball team and that the primary beneficiaries of the organization were the individual team participants. <u>Id.</u> The Court further reasoned that allowing spectators to watch the baseball games free of charge was incidental to the purpose of providing enjoyment, recreation, and social interaction for the team participants. <u>Id.</u> Likewise, in <u>Media Sports League, Inc. v. Commissioner</u>, T.C. Memo. 1986-568, we found that a substantial purpose of the organization's activities was to further the social and recreational interests of its members.

Lastly, we have considered when the offering of recreational facilities alone would qualify an organization for exempt status. In <u>Peters v. Commissioner</u>, 21 T.C. 55,[3] we concluded that a foundation organized to promote social welfare by

---

[3] GameHearts did not cite <u>Peters v. Commissioner</u>, 21 T.C. 55 (1953), but rather a revenue ruling, Rev. Rul. 77-366, 1997-2 C.B. 192, that in turn cites <u>Peters</u>. In responding to GameHearts, respondent focused on the lack of counseling or therapy offered in addition to the recreation. Of course, under <u>Peters</u>, respondent's argument that anyone over 18 and sober may participate would favor GameHearts.

**[\*14]** furnishing public swimming facilities to all residents of a school district, especially those who did not have access to private facilities, was a charitable organization within the meaning of section 23(o)(2) as in effect in 1948 (the predecessor of section 170 which permitted deductions for contributions to charitable organizations, among others). In Columbia Park & Recreation Ass'n v. Commissioner, 88 T.C. 1 (1987), aff'd, 838 F.2d 465 (4th Cir. 1988), we considered whether an organization qualified as exempt under section 501(c)(4) (as a social welfare organization) that offered recreational facilities to residents of a private planned community also qualified as a section 501(c)(3) charitable organization.[4] We concluded that the organization was not charitable because it was organized for the benefit of the residents of the planned community with access limited to those residents and funding provided by those residents rather than from voluntary contributions from the public. Id. at 18-19. Key to the distinction we drew between the organization in Peters (and other authorities cited by the organization) and that in Columbia Park & Recreation was not whether the activities themselves were charitable but rather whether "the various organizations

---

[4] The administrative record indicates that respondent urged GameHearts to apply for exemption as a social welfare organization under sec. 501(c)(4) instead of sec. 501(c)(3) but GameHearts declined. The issue of whether GameHearts might qualify under that provision is not, therefore, before us.

[*15] involved were found to be organized for a charitable purpose and such activities accomplished that purpose." Id. at 27.

We do not conclude that recreational therapy would not be an appropriate means of achieving a charitable purpose. We likewise do not conclude that the type of recreation--here gaming--should affect our analysis of GameHearts' status. We also accept GameHearts' argument that its offerings are less attractive to those gaming participants who could afford to pay to play.

Nonetheless, we are unable to conclude on the administrative record that GameHearts is "operated exclusively" for one or more exempt purposes. Gaming in an alcohol-free environment may provide a therapeutic outlet to recovering addicts, and community-minded sobriety may benefit the community as a whole, but the question of tax exemption turns on whether there is a single substantial nonexempt purpose, notwithstanding the importance of the exempt purpose. See Better Bus. Bureau of Wash., D.C., 326 U.S. at 283. While it may be laudable, in the light of the administrative record in this case promotion of sober recreation is insufficient justification here for tax-exempt status under a statute that must be construed strictly. The decisive factor here is that the form of recreation offered as therapy also is offered by for-profit entities, and GameHearts even emphasized, in its application for tax exemption, that it would introduce new participants to that

[*16] for-profit recreational market and "boost the overall market shares of the industry". We also note that GameHearts received contributions of surplus materials from the industry. While GameHearts itself does not profit from the recreation it offers and could not offer recreational gaming experiences that would compete in the for-profit recreational gaming markets, we conclude nonetheless, consistent with our holdings in Schoger Found. and Wayne Baseball, that recreation is a significant purpose, in addition to the therapy provided, because of the inherently commercial nature of the recreation and the ties to the for-profit recreational gaming industry.

We therefore hold that GameHearts does not operate exclusively for charitable purposes within the meaning of section 501(c)(3). Because of our holding, we need not consider whether GameHearts was organized for tax-exempt purposes. We have considered the remaining arguments, and they are either irrelevant or otherwise lack merit.

To reflect the foregoing,

Decision will be entered

for respondent.
